| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **BWH Texas, LLC** |
| United States Bankruptcy Court for the: | **NORTHERN DISTRICT OF TEXAS** |
| Case number (if known) | **23-43085** |

☐ Check if this is an amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy     04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1:    Income

1.    **Gross revenue from business**

☐ None

**Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year**

**Sources of revenue**
Check all that apply.

**Gross revenue**
(before deductions and exclusions

| | | | | | | |
|---|---|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From | 01/01/2023 MM / DD / YYYY | to | Filing date | ☑ Operating a business ☐ Other _____ | $0.00 |
| **For prior year:** | From | 01/01/2022 MM / DD / YYYY | to | 12/31/2022 MM / DD / YYYY | ☑ Operating a business ☐ Other _____ | $0.00 |
| **For the year before that:** | From | 01/01/2021 MM / DD / YYYY | to | 12/31/2021 MM / DD / YYYY | ☑ Operating a business ☐ Other _____ | $539,499.28 |

2.    **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

### Part 2:    List Certain Transfers Made Before Filing for Bankruptcy

3.    **Certain payments or transfers to creditors within 90 days before filing this case**

   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|---|
| 3.1. | **See supplement to Q#3** Creditor's name _____ Street _____ _____ City    State    ZIP Code | _____ | _____ | ☐ Secured debt ☐ Unsecured loan repayments ☐ Suppliers or vendors ☐ Services ☐ Other _____ |

| Debtor | BWH Texas, LLC | Case number (if known) | 23-43085 |
|--------|----------------|------------------------|----------|
| | Name | | |

**4.    Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or co-signed by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575.  (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor.  11 U.S.C. § 101(31).

☐ None

| | Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | **See Supplement to Q#4** | | _____ | |
| | Insider's name | | | |
| | _____ | | | |
| | Street | | | |
| | _____ | | | |
| | City        State    ZIP Code | | | |
| | **Relationship to debtor** | | | |
| | _____ | | | |

**5.    Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

**6.    Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**7.    Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity--within 1 year before filing this case.

☐ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Renee Galloway, et al. v. Martorello, et al.** | **Class action suit against various defendants - including Debtor and Bluetech Irrevocable Trust - related to alleged usurious loans** | **U. S. Dist. Ct. - E.D. Virginia** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | | | **701 E. Broad Street** | ☐ Concluded |
| | | | Street | |
| | **Case number** | | | |
| | **3:19-cv-314** | | **Richmond        VA    23219** | |
| | | | City        State   ZIP Code | |

Debtor    __BWH Texas, LLC_____    Case number (if known) __23-43085_____
          Name

**8.   Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9.   List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Part 5: | Certain Losses |
|---|---|

**10.  All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Part 6: | Certain Payments or Transfers |
|---|---|

**11.  Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

| | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Freeman Law, PLLC** | | **10/3/2023 ($25,000)** | **$48,672.49** |
| | **Address** | | | |
| | **7011 Main Street**<br>Street | | **10/12/2023* ($23,672.49) (received date; had been initiated prior to petition date)** | |
| | **Frisco        TX    75034**<br>City      State    ZIP Code | | | |
| | **Email or website address** | | | |
| | **Who made the payment, if not debtor?** | | | |
| | **Debtor/Bluetech Irrevocable Trust** | | | |

**12.  Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Debtor | **BWH Texas, LLC** | Case number (if known) | **23-43085** |
|---|---|---|---|
| | Name | | |

**13.  Transfers not already listed on this statement**

List any transfers of money or other property--by sale, trade, or any other means--made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☐ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

13.1.  **See Supplement to Q#13** _____      _____      _____

**Address**

_____
Street

_____

_____
City                          State      ZIP Code

**Relationship to debtor**

_____

---

# Part 7:    Previous Locations

**14.  Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

---

# Part 8:    Health Care Bankruptcies

**15.  Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

- ■ diagnosing or treating injury, deformity, or disease, or

- ■ providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No.  Go to Part 9.
☐ Yes.  Fill in the information below.

---

# Part 9:    Personally Identifiable Information

**16.  Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes.  State the nature of the information collected and retained _____

Does the debtor have a privacy policy about that information?
☐ No.
☐ Yes.

---

| Debtor | **BWH Texas, LLC** | Case number (if known) | **23-43085** |
|---|---|---|---|
| | Name | | |

**17.** Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b) or other pension or profit-sharing plan made available by the debtor as an employee benefit?

☑ No.  Go to Part 10.

☐ Yes.  Does the debtor serve as plan administrator?

    ☐ No.  Go to Part 10.

    ☐ Yes.  Fill in below:

---

### Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18.** **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts, certificates of deposit, and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | **Capital Security Bank**<br>Name<br>**P.O. Box 906**<br>Street<br>**Centrepoint, Avarua, Rarotonga**<br><br>**Cook Islands**<br>City    State   ZIP Code | XXXX- **1** **0** **8** **7** | ☑ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other _____ | **10/2023** | |

**19.** **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

**20.** **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case.  Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

---

### Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

**21.** **Property held for another**

List any property that the debtor holds or controls that another entity owns.  Include any property borrowed from, being stored for, or held in trust.  Do not list leased or rented property.

☑ None

---

| Debtor | **BWH Texas, LLC** | Case number (if known) | **23-43085** |
|--------|--------------------|------------------------|--------------|
|        | Name               |                        |              |

## Part 12:  Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?**
    Include settlements and orders.

    ☒ No
    ☐ Yes.  Provide details below.

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

    ☒ No
    ☐ Yes.  Provide details below.

24. **Has the debtor notified any govermental unit of any release of hazardous material?**

    ☒ No
    ☐ Yes.  Provide details below.

## Part 13:  Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**
    List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.  Include this information even if already listed in the Schedules.

    ☐ None

|       | Business name and address | Describe the nature of the business | Employer Identification number |
|-------|---------------------------|-------------------------------------|--------------------------------|
| 25.1. | **See attached "Acknowledgment"** | | Do not include Social Security number or ITIN. |
|       | Name | | |
|       | | | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___ |
|       | Street | | |
|       | | | Dates business existed |
|       | City          State   ZIP Code | | From _____   To _____ |
| 25.2. | **See attached Disclosures in Interrogatory Responses** | | Do not include Social Security number or ITIN. |
|       | Name | | |
|       | | | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___ |
|       | Street | | |
|       | | | Dates business existed |
|       | City          State   ZIP Code | | From _____   To _____ |

| Debtor | **BWH Texas, LLC** | Case number (if known) | **23-43085** |
|---|---|---|---|
| | Name | | |

## 26. Books, records, and financial statements

26a.  List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| **Name and address** | | **Dates of service** | |
|---|---|---|---|
| 26a.1. | **David French & Associates** | **From** _____ | **To** _____ |
| | Name | | |
| | **609 Castle Ridge Rd.** | | |
| | Street | | |
| | **Suite 445** | | |
| | **Austin**           **TX**     **78746** | | |
| | City                State   ZIP Code | | |

26b.  List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☑ None

26c.  List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☑ None

26d.  List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No.

☐ Yes.  Give the details about the two most recent inventories.

## 28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Matt Martorello fbo Matthew J. M** | **3805 Greenbrier Drive Dallas, TX 75225** | **Custodian under TUTMA / Equity Ownership** | **33.3%** |
| **Matt Martorello fbo Vincent J. Ma** | **3805 Greenbrier Drive Dallas, TX 75225** | **Custodian under TUTMA / Equity Ownership** | **33.3%** |
| **Matt Martorello fbo Thomas H. M** | **3805 Greenbrier Drive Dallas, TX 75225** | **Custodian under TUTMA / Equity Ownership** | **33.3%** |

## 29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐ No

☑ Yes.  Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **See attached Disclosures in Inte** | | | From _____  To _____ |
| **Guardian Trust Corp, Trustee of** | | | From _____  To _____ |
| **Matt Martorello fbo children** | | **Shareholder** | From _____  To _____ |
| **See attached supplement to Q29** | | | From _____  To _____ |

| Debtor | **BWH Texas, LLC** | Case number (if known) | **23-43085** |
|---|---|---|---|
| | Name | | |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

30.1. **Eventide Acquisition**
Name
**See attached account statement**
Street

_____

City                State   ZIP Code

**Relationship to debtor**

_____

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Part 14: | Signature and Declaration |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **11/06/2023**
MM / DD / YYYY

X **/s/ Matthew Martorello**                                    Printed name  **Matthew Martorello**
Signature of individual signing on behalf of the debtor

Position or relationship to debtor **President of Manager of Debtor**

Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?

☑ No
☐ Yes

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **BWH Texas, LLC** | § | |
| | § | Case No.   **23-43085** |
| | § | |
| Debtor(s) | § | Chapter   **11** |

# DECLARATION FOR ELECTRONIC FILING OF AMENDED PETITION, ORIGINAL/AMENDED BANKRUPTCY STATEMENTS AND SCHEDULES, AND/OR AMENDED MASTER MAILING LIST (MATRIX)

As an individual debtor in this case, or as the individual authorized to act on behalf of the corporation, partnership, or limited liability company named as the debtor in this case, I HEREBY DECLARE UNDER PENALTY OF PERJURY that I have read

☑ the original statements and schedules to be filed electronically in this case

☐ the voluntary petition as amended on _____ and to be filed electronically in this case

☐ the statements and schedules as amended on _____ and to be filed electronically in this case

☐ the master mailing list (matrix) as amended on _____ and to be filed electronically in this case

and that the information provided therein is true and correct.  I understand that this Declaration is to be filed with the Bankruptcy Court within seven (7) business days after such statements, schedules, and/or amended petition or matrix have been filed electronically.  I understand that a failure to file the signed original of this Declaration as to any original statments and schedules will result in the dismissal of my case and that, as to any amended petition, statement, schedule or matrix, such failure may result in the striking of the amendment(s).

☑ *[Only include if petitioner is a corporation, partnership or limited liability company]* --
I hereby further declare under penalty of perjury that I have been authorized to file the statements, schedules, and/or amended petition or amended matrix on behalf of the debtor in this case.

Date:  **11/6/2023**      **/s/ Matthew Martorello** _____
Matthew Martorello
President of Manager of Debtor
**Complete EIN:  98-0689205** _____

# SOFA Q#3, 4, 13, 30



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

## Net Worth Summary for Account 571086

| Account category | Balance as at September 26, 2023 |
|---|---:|
| Cash | $ 6,810.30 |
| **Current net worth** | $ 6,810.30 |

**Highest net worth 1 Jan 2020 to 26 Sep 2023**          3,167,457.11



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

## Account Summary

|  | | Reported in Native Currency | | | |
|---|---|---|---|---|---|
| Account name | Balance | Currency | FX Rate | | Balance |
| **Cash Accounts** | | | | | |
| **US Dollar (USD)** | | | | | |
| USD Call Account | 6,810.30 | USD | 1.000000 | | 6,810.30 |
| | | | | **Cash Accounts** | 6,810.30 |



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

## Account Transactions for the period 01-Jan-2020 to 26-Sep-2023

### USD Call Account

| Value date | Trans. ID | Trans. type | Transaction description / Additional details | Withdrawal | Deposit | Balance |
|---|---|---|---|---|---|---|
| | | | | | **Opening Balance** | 110,892.86 |
| 21-Jan-2020 | 320507 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,951.30 | 127,844.16 |
| 21-Jan-2020 | 320507 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 127,824.16 |
| 31-Jan-2020 | 323280 | INT-DDI | Demand Deposit Interest 571086-304594 to Jan 31, 2020 / Demand Deposit Interest 571086-304594 to Jan 31, 2020 | | 10.16 | 127,834.32 |
| 31-Jan-2020 | 324051 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 127,784.32 |
| 17-Feb-2020 | 325245 | DPF | Wire Transfer In / US Bancorp Fund Services LLC FBO | | 32,379.03 | 160,163.35 |
| 17-Feb-2020 | 325245 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC FBO | 20.00 | | 160,143.35 |
| 29-Feb-2020 | 326558 | INT-DDI | Demand Deposit Interest 571086-304594 to Feb 29, 2020 / Demand Deposit Interest 571086-304594 to Feb 29, 2020 | | 11.32 | 160,154.67 |
| 29-Feb-2020 | 327344 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 160,104.67 |
| 17-Mar-2020 | 329192 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 15,855.41 | 175,960.08 |
| 17-Mar-2020 | 329192 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 175,940.08 |
| 31-Mar-2020 | 330810 | INT-DDI | Demand Deposit Interest 571086-304594 to Mar 31, 2020 / Demand Deposit Interest 571086-304594 to Mar 31, 2020 | | 14.39 | 175,954.47 |
| 31-Mar-2020 | 331584 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 175,904.47 |
| 17-Apr-2020 | 332978 | DPF | Wire Transfer In / US Bancorp Fund Services LLC FBO | | 16,951.30 | 192,855.77 |
| 17-Apr-2020 | 332978 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC FBO | 20.00 | | 192,835.77 |
| 30-Apr-2020 | 333965 | INT-DDI | Demand Deposit Interest 571086-304594 to Apr 30, 2020 / Demand Deposit Interest 571086-304594 to Apr 30, 2020 | | 15.40 | 192,851.17 |
| 30-Apr-2020 | 334739 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 192,801.17 |
| 18-May-2020 | 336419 | DPF | Wire Transfer In / Us Bancorp Fund Services LLC FBO | | 25,915.65 | 218,716.82 |
| 18-May-2020 | 336419 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services LLC FBO | 20.00 | | 218,696.82 |
| 31-May-2020 | 337513 | INT-DDI | Demand Deposit Interest 571086-304594 to May 31, 2020 / Demand Deposit Interest 571086-304594 to May 31, 2020 | | 17.72 | 218,714.54 |



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

| Date | Ref | Type | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|
| 31-May-2020 | 338290 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 218,664.54 |
| 16-Jun-2020 | 339836 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,951.30 | 235,615.84 |
| 16-Jun-2020 | 339836 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 235,595.84 |
| 30-Jun-2020 | 341257 | INT-DDI | Demand Deposit Interest 571086-304594 to Jun 30, 2020 / Demand Deposit Interest 571086-304594 to Jun 30, 2020 | | 18.90 | 235,614.74 |
| 30-Jun-2020 | 342059 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 235,564.74 |
| 16-Jul-2020 | 343669 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,403.36 | 251,968.10 |
| 16-Jul-2020 | 343669 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 251,948.10 |
| 31-Jul-2020 | 345283 | INT-DDI | Demand Deposit Interest 571086-304594 to Jul 31, 2020 / Demand Deposit Interest 571086-304594 to Jul 31, 2020 | | 10.55 | 251,958.65 |
| 31-Jul-2020 | 346095 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 251,928.65 |
| 18-Aug-2020 | 347718 | DPF | Wire Transfer In / US Bankcorp Fund Services LLC | | 21,743.85 | 273,672.50 |
| 18-Aug-2020 | 347718 | DPF-FEE | Wire Transfer Fee / US Bankcorp Fund Services LLC | 20.00 | | 273,652.50 |
| 26-Aug-2020 | 348476 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Ltd | 3,036.88 | | 270,615.62 |
| 26-Aug-2020 | 348476 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Ltd | 10.00 | | 270,605.62 |
| 31-Aug-2020 | 349348 | INT-DDI | Demand Deposit Interest 571086-304594 to Aug 31, 2020 / Demand Deposit Interest 571086-304594 to Aug 31, 2020 | | 11.27 | 270,616.89 |
| 31-Aug-2020 | 350178 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 270,586.89 |
| 16-Sep-2020 | 351966 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,951.30 | 287,538.19 |
| 16-Sep-2020 | 351966 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 287,518.19 |
| 30-Sep-2020 | 353662 | INT-DDI | Demand Deposit Interest 571086-304594 to Sep 30, 2020 / Demand Deposit Interest 571086-304594 to Sep 30, 2020 | | 11.70 | 287,529.89 |
| 30-Sep-2020 | 354516 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 287,499.89 |
| 21-Oct-2020 | 356308 | DPF | Wire Transfer In / US BANCORP FUND SERVICES LLC FBO | | 16,403.36 | 303,903.25 |
| 21-Oct-2020 | 356308 | DPF-FEE | Wire Transfer Fee / US BANCORP FUND SERVICES LLC FBO | 20.00 | | 303,883.25 |
| 31-Oct-2020 | 357744 | INT-DDI | Demand Deposit Interest 571086-304594 to Oct 31, 2020 / Demand Deposit Interest 571086-304594 to Oct 31, 2020 | | 2.48 | 303,885.73 |
| 31-Oct-2020 | 358584 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 303,855.73 |
| 20-Nov-2020 | 360617 | DPF | Wire Transfer In / US Bancorp Fund Service LLC | | 25,232.75 | 329,088.48 |



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 20-Nov-2020 | 360617 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Service LLC | 20.00 | | 329,068.48 |
| 30-Nov-2020 | 361905 | INT-DDI | Demand Deposit Interest 571086-304594 to Nov 30, 2020 / Demand Deposit Interest 571086-304594 to Nov 30, 2020 | | 2.51 | 329,070.99 |
| 30-Nov-2020 | 362757 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 329,040.99 |
| 21-Dec-2020 | 364963 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,403.36 | 345,444.35 |
| 21-Dec-2020 | 364963 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 345,424.35 |
| 31-Dec-2020 | 366362 | INT-DDI | Demand Deposit Interest 571086-304594 to Dec 31, 2020 / Demand Deposit Interest 571086-304594 to Dec 31, 2020 | | 2.90 | 345,427.25 |
| 31-Dec-2020 | 367221 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 345,397.25 |
| 20-Jan-2021 | 369676 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,951.30 | 362,348.55 |
| 20-Jan-2021 | 369676 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 362,328.55 |
| 31-Jan-2021 | 371107 | INT-DDI | Demand Deposit Interest 571086-304594 to Jan 31, 2021 / Demand Deposit Interest 571086-304594 to Jan 31, 2021 | | 3.10 | 362,331.65 |
| 31-Jan-2021 | 371927 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 362,301.65 |
| 22-Feb-2021 | 373925 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 27,102.96 | 389,404.61 |
| 22-Feb-2021 | 373925 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 389,384.61 |
| 28-Feb-2021 | 375223 | INT-DDI | Demand Deposit Interest 571086-304594 to Feb 28, 2021 / Demand Deposit Interest 571086-304594 to Feb 28, 2021 | | 2.87 | 389,387.48 |
| 28-Feb-2021 | 376085 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 389,357.48 |
| 19-Mar-2021 | 378058 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 15,307.47 | 404,664.95 |
| 19-Mar-2021 | 378058 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 404,644.95 |
| 31-Mar-2021 | 380000 | INT-DDI | Demand Deposit Interest 571086-304594 to Mar 31, 2021 / Demand Deposit Interest 571086-304594 to Mar 31, 2021 | | 3.41 | 404,648.36 |
| 31-Mar-2021 | 380865 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 404,618.36 |
| 16-Apr-2021 | 382328 | DPF | Wire Transfer In / Us Bancorp Fund Services Llc Fbo | | 16,951.30 | 421,569.66 |
| 16-Apr-2021 | 382328 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services Llc Fbo | 20.00 | | 421,549.66 |
| 30-Apr-2021 | 384401 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 421,519.66 |
| 19-May-2021 | 386333 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 33,386.39 | 454,906.05 |
| 19-May-2021 | 386333 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services LLC | 20.00 | | 454,886.05 |



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

| Date | Ref | Type | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|
| 31-May-2021 | 387562 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 454,856.05 |
| 16-Jun-2021 | 390587 | DPF | Wire Transfer In / US Bancorp Fund Services LLC | | 16,951.30 | 471,807.35 |
| 16-Jun-2021 | 390587 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC | 20.00 | | 471,787.35 |
| 30-Jun-2021 | 392062 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 471,757.35 |
| 16-Jul-2021 | 394580 | DPF | Wire Transfer In / Us Bancorp Fund Services Llc Fbo | | 16,403.36 | 488,160.71 |
| 16-Jul-2021 | 394580 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services Llc Fbo | 20.00 | | 488,140.71 |
| 31-Jul-2021 | 396032 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 30.00 | | 488,110.71 |
| 03-Aug-2021 | 397430 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 249,955.00 | 738,065.71 |
| 03-Aug-2021 | 397430 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 738,045.71 |
| 17-Aug-2021 | 398235 | DPF | Wire Transfer In / Us Bancorp Fund Services Llc | | 29,647.76 | 767,693.47 |
| 17-Aug-2021 | 398235 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services Llc | 20.00 | | 767,673.47 |
| 18-Aug-2021 | 398243 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 3,736.38 | | 763,937.09 |
| 18-Aug-2021 | 398243 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 763,837.09 |
| 15-Sep-2021 | 402455 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 73,480.32 | 837,317.41 |
| 15-Sep-2021 | 402455 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 837,297.41 |
| 20-Sep-2021 | 402917 | DPF | Wire Transfer In / US Bancorp Fund Services LLC FBO | | 16,951.30 | 854,248.71 |
| 20-Sep-2021 | 402917 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC FBO | 20.00 | | 854,228.71 |
| 12-Oct-2021 | 406514 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 73,480.32 | 927,709.03 |
| 12-Oct-2021 | 406514 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 927,689.03 |
| 19-Oct-2021 | 407366 | DPF | Wire Transfer In / Us Bancorpo Funds Services Llc | | 16,403.36 | 944,092.39 |
| 19-Oct-2021 | 407366 | DPF-FEE | Wire Transfer Fee / Us Bancorpo Funds Services Llc | 20.00 | | 944,072.39 |
| 08-Nov-2021 | 410494 | DPF | Wire Transfer In / Eventide Credit Acquisitions Llc | | 73,480.32 | 1,017,552.71 |
| 08-Nov-2021 | 410494 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions Llc | 20.00 | | 1,017,532.71 |
| 22-Nov-2021 | 411585 | DPF | Wire Transfer In / Us Bancorp Fund Services Llc Fbo | | 35,651.32 | 1,053,184.03 |
| 22-Nov-2021 | 411585 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services Llc Fbo | 20.00 | | 1,053,164.03 |
| 22-Dec-2021 | 416157 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 73,480.32 | 1,126,644.35 |
| 22-Dec-2021 | 416157 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 1,126,624.35 |



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

| Date | Ref | Code | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|
| 24-Dec-2021 | 416380 | DPF | Wire Transfer In / Us Bancorp Fund Services LLC FBO | | 16,403.36 | 1,143,027.71 |
| 24-Dec-2021 | 416380 | DPF-FEE | Wire Transfer Fee / Us Bancorp Fund Services LLC FBO | 20.00 | | 1,143,007.71 |
| 07-Jan-2022 | 419242 | FEE-AMF | Administration Fee / Monthly Statements Charge | 10.00 | | 1,142,997.71 |
| 26-Jan-2022 | 421120 | DPF | Wire Transfer In / US Bancorp Fund Services LLC FBO | | 16,951.30 | 1,159,949.01 |
| 26-Jan-2022 | 421120 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC FBO | 20.00 | | 1,159,929.01 |
| 04-Feb-2022 | 423358 | DPF | Wire Transfer In / US Bancorp Fund Services LLC FBO | | 2,007,528.10 | 3,167,457.11 |
| 17-Feb-2022 | 424546 | DPF | Wire Transfer In / US Bancorp Fund Services LLC FBO | | 21,123.19 | 3,188,580.30 |
| 17-Feb-2022 | 424546 | DPF-FEE | Wire Transfer Fee / US Bancorp Fund Services LLC FBO | 20.00 | | 3,188,560.30 |
| 17-Feb-2022 | 424563 | XFR | Transfer to  571087-001 / Distribution | 2,000,000.00 | | 1,188,560.30 |
| 17-Feb-2022 | 424563 | XFR-FEE | Wire Transfer Fee / Distribution | 20.00 | | 1,188,540.30 |
| 10-Mar-2022 | 428137 | XFR | Transfer to  571087-001 / Capital Distribution | 1,100,000.00 | | 88,540.30 |
| 10-Mar-2022 | 428137 | XFR-FEE | Wire Transfer Fee / Capital Distribution | 20.00 | | 88,520.30 |
| 31-Mar-2022 | 431120 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 88,470.30 |
| 30-Apr-2022 | 435881 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 88,420.30 |
| 31-May-2022 | 439929 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 88,370.30 |
| 29-Jun-2022 | 444114 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 7,850.00 | | 80,520.30 |
| 29-Jun-2022 | 444114 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 80,420.30 |
| 30-Jun-2022 | 444953 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 80,370.30 |
| 29-Jul-2022 | 448534 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 2,740.00 | | 77,630.30 |
| 29-Jul-2022 | 448534 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 77,530.30 |
| 31-Jul-2022 | 449548 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,480.30 |
| 31-Aug-2022 | 453998 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,430.30 |
| 30-Sep-2022 | 459132 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,380.30 |
| 31-Oct-2022 | 463398 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,330.30 |
| 30-Nov-2022 | 467487 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,280.30 |
| 31-Dec-2022 | 472588 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,230.30 |
| 31-Jan-2023 | 477307 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | 50.00 | | 77,180.30 |



PO Box 906, Centrepoint, Avarua. Rarotonga, Cook Islands, PH: 682 22505, W: www.capitalsecuritybank.com

**571086 - Breakwater Holding LLC**

| | | | | | | |
|---|---|---|---|---|---|---|
| 28-Feb-2023 | 481413 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 77,130.30 |
| 28-Mar-2023 | 485033 | XFR | Transfer to  571087-001 | 70,000.00 | | 7,130.30 |
| 28-Mar-2023 | 485033 | XFR-FEE | Wire Transfer Fee | 20.00 | | 7,110.30 |
| 31-Mar-2023 | 486335 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 7,060.30 |
| 30-Apr-2023 | 490989 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 7,010.30 |
| 31-May-2023 | 496248 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 6,960.30 |
| 30-Jun-2023 | 501327 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 6,910.30 |
| 31-Jul-2023 | 505561 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 6,860.30 |
| 31-Aug-2023 | 509954 | FEE-AUC | Monthly Administration Fee 571086-304594 / Fee | | 50.00 | 6,810.30 |
| | | | **Account 571086-001** | 3,189,953.26 | 3,085,870.70 | 6,810.30 |

## Account Transactions for the period 01-Jan-2020 to 17-Oct-2023

**Purpose**

### USD Call Account

| Value date | Trans. ID | Trans. type | Transaction description / Additional details | Withdrawal | Deposit | Balance | |
|---|---|---|---|---|---|---|---|
| | | | | | **Opening Balance** | 909,120.17 | |
| 10-Jan-2020 | 319954 | WDF | Withdraw Cheque / Giordani Swanger Ripp LLP, Operating Account | 22,080.00 | | 887,040.17 | Legal |
| 10-Jan-2020 | 319954 | WDF-FEE | Cheque Fee / Giordani Swanger Ripp LLP, Operating Account | 100.00 | | 886,940.17 | Wire fee |
| 23-Jan-2020 | 320618 | WDF | Wire Transfer Out / Giordani Swanger Ripp LLP, Operating Acct | 25,000.00 | | 861,940.17 | Legal |
| 23-Jan-2020 | 320618 | WDF-FEE | Wire Transfer Fee / Giordani Swanger Ripp LLP, Operating Acct | 100.00 | | 861,840.17 | Wire fee |
| 24-Jan-2020 | 320654 | WDF | Wire Transfer Out / Loeb and Loeb LLP, General Acct | 250,000.00 | | 611,840.17 | Debt Funding to ECA for litigaiton? |
| 24-Jan-2020 | 320654 | WDF-FEE | Wire Transfer Fee / Loeb and Loeb LLP, General Acct | 100.00 | | 611,740.17 | Wire fee |
| 31-Jan-2020 | 323326 | INT-DDI | Demand Deposit Interest 571087-304592 to Jan 31, 2020 / Demand Deposit Interest 571087-304592 to Jan 31, 2020 | | 70.74 | 611,810.91 | Interest Income |
| 28-Feb-2020 | 325977 | WDF | Wire Transfer Out / Giordani Swanger Ripp LLP, Operating Acct | 29,715.00 | | 582,095.91 | Legal |
| 28-Feb-2020 | 325977 | WDF-FEE | Wire Transfer Fee / Giordani Swanger Ripp LLP, Operating Acct | 100.00 | | 581,995.91 | Wire fee |
| 29-Feb-2020 | 326601 | INT-DDI | Demand Deposit Interest 571087-304592 to Feb 29, 2020 / Demand Deposit Interest 571087-304592 to Feb 29, 2020 | | 49.14 | 582,045.05 | Interest Income |
| 05-Mar-2020 | 328393 | WDF | Wire Transfer Out / Woods Rogers PLC | 5,900.00 | | 576,145.05 | Legal |
| 05-Mar-2020 | 328393 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 576,045.05 | Wire fee |
| 18-Mar-2020 | 329201 | DPF | Wire Transfer In / Woods Rogers PLC - Funds returned | | 5,880.00 | 581,925.05 | Returned Wire |
| 18-Mar-2020 | 329201 | DPF-FEE | Wire Transfer Fee / Woods Rogers PLC - Funds returned | 20.00 | | 581,905.05 | Wire fee |
| 18-Mar-2020 | 329202 | WDF | Wire Transfer Out / Woods Rogers PLC | 5,900.00 | | 576,005.05 | Legal |
| 18-Mar-2020 | 329202 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 575,905.05 | Wire fee |
| 19-Mar-2020 | 329285 | WDF | Wire Transfer Out / Woods Rogers PLC | 4,750.00 | | 571,155.05 | Legal |
| 19-Mar-2020 | 329285 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 571,055.05 | Wire fee |
| 24-Mar-2020 | 329533 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Account | 11,815.89 | | 559,239.16 | Legal |
| 24-Mar-2020 | 329533 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Account | 100.00 | | 559,139.16 | Wire fee |
| 31-Mar-2020 | 330850 | INT-DDI | Demand Deposit Interest 571087-304592 to Mar 31, 2020 / Demand Deposit Interest 571087-304592 to Mar 31, 2020 | | 49.23 | 559,188.39 | Interest Income |
| 16-Apr-2020 | 332910 | WDF | Wire Transfer Out / Woods Rogers PLC | 21,562.00 | | 537,626.39 | Legal |
| 16-Apr-2020 | 332910 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 537,526.39 | Wire fee |
| 17-Apr-2020 | 332992 | WDF | Wire Transfer Out / Hughes Hubbard and Reed LLP | 118,618.18 | | 418,908.21 | Legal |
| 17-Apr-2020 | 332992 | WDF-FEE | Wire Transfer Fee / Hughes Hubbard and Reed LLP | 100.00 | | 418,808.21 | Wire fee |
| 22-Apr-2020 | 333388 | DPF | Wire Transfer In / Woods Roger Plc - Return Of Funds 5.3.20 | | 5,800.00 | 424,608.21 | Returned Wire |
| 22-Apr-2020 | 333551 | WDF | Wire Transfer Out / Woods Roger Plc | 5,900.00 | | 418,708.21 | Legal |
| 30-Apr-2020 | 334006 | INT-DDI | Demand Deposit Interest 571087-304592 to Apr 30, 2020 / Demand Deposit Interest 571087-304592 to Apr 30, 2020 | | 40.98 | 418,749.19 | Interest Income |
| 30-Apr-2020 | 334740 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 30.00 | | 418,719.19 | Fee |
| 06-May-2020 | 335772 | WDF | Wire Transfer Out / Woods Rogers PLC | 10,100.00 | | 408,619.19 | Legal |
| 06-May-2020 | 335772 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 408,519.19 | Wire fee |
| 11-May-2020 | 336011 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Account | 50,098.78 | | 358,420.41 | Legal |
| 11-May-2020 | 336011 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 358,320.41 | Wire fee |
| 31-May-2020 | 337552 | INT-DDI | Demand Deposit Interest 571087-304592 to May 31, 2020 / Demand Deposit Interest 571087-304592 to May 31, 2020 | | 32.45 | 358,352.86 | Interest Income |
| 31-May-2020 | 338291 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 30.00 | | 358,322.86 | Fee |
| 08-Jun-2020 | 339370 | WDF | Wire Transfer Out / Woods Rogers PLC | 22,602.85 | | 335,720.01 | Legal |
| 08-Jun-2020 | 339370 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 335,620.01 | Wire fee |
| 18-Jun-2020 | 339923 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 28,549.47 | | 307,070.54 | Legal |
| 18-Jun-2020 | 339923 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 306,970.54 | Wire fee |
| 30-Jun-2020 | 341296 | INT-DDI | Demand Deposit Interest 571087-304592 to Jun 30, 2020 / Demand Deposit Interest 571087-304592 to Jun 30, 2020 | | 27.35 | 306,997.89 | Interest Income |
| 30-Jun-2020 | 342060 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 30.00 | | 306,967.89 | Fee |
| 02-Jul-2020 | 341971 | WDF | Wire Transfer Out / Texas IOLTA Foundation Trust for Giordani Baker Grossman and Ripp LLP | 149,423.00 | | 157,544.89 | Legal |
| 02-Jul-2020 | 341971 | WDF-FEE | Wire Transfer Fee / Texas IOLTA Foundation Trust for Giordani Baker Grossman and Ripp LLP | 100.00 | | 157,444.89 | Wire fee |
| 16-Jul-2020 | 343585 | WDF | Wire Transfer Out / Woods Rogers PLC | 4,696.75 | | 152,748.14 | Legal |
| 16-Jul-2020 | 343585 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 152,648.14 | Wire fee |

| Date | Ref | Type | Description | Debit | Credit | Balance | Note |
|---|---|---|---|---|---|---|---|
| 24-Jul-2020 | 344055 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 27,343.25 | | 125,304.89 | Legal |
| 24-Jul-2020 | 344055 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 125,204.89 | Wire fee |
| 31-Jul-2020 | 344530 | XFR | Transfer from 571282-001 / Loan from Capstone Irrevocable Trust | | 2,000,000.00 | 2,125,204.89 | Inbound Loan from Capstone Trust |
| 31-Jul-2020 | 344533 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 824,130.00 | | 1,301,074.89 | Legal (UCC, Leob and FP?) after BK dismissal |
| 31-Jul-2020 | 344533 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 1,300,974.89 | Wire fee |
| 31-Jul-2020 | 345323 | INT-DDI | Demand Deposit Interest 571087-304592 to Jul 31, 2020 / Demand Deposit Interest 571087-304592 to Jul 31, 2020 | | 8.19 | 1,300,983.08 | Interest Income |
| 06-Aug-2020 | 345058 | WDF | Wire Transfer Out / Woods Rogers PLC | 14,550.00 | | 1,286,433.08 | Legal |
| 06-Aug-2020 | 345058 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 1,286,333.08 | Wire fee |
| 17-Aug-2020 | 347590 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 22,538.50 | | 1,263,794.58 | Legal |
| 17-Aug-2020 | 347590 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 1,263,694.58 | Wire fee |
| 31-Aug-2020 | 349390 | INT-DDI | Demand Deposit Interest 571087-304592 to Aug 31, 2020 / Demand Deposit Interest 571087-304592 to Aug 31, 2020 | | 55.14 | 1,263,749.72 | Interest Income |
| 10-Sep-2020 | 351660 | WDF | Wire Transfer Out / Woods Rogers PLC | 600.00 | | 1,263,149.72 | Legal |
| 10-Sep-2020 | 351660 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 1,263,049.72 | Wire fee |
| 16-Sep-2020 | 351981 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 21,781.00 | | 1,241,268.72 | Legal |
| 16-Sep-2020 | 351981 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 1,241,168.72 | Wire fee |
| 30-Sep-2020 | 353709 | INT-DDI | Demand Deposit Interest 571087-304592 to Sep 30, 2020 / Demand Deposit Interest 571087-304592 to Sep 30, 2020 | | 52.14 | 1,241,220.86 | Interest Income |
| 16-Oct-2020 | 356154 | WDF | Wire Transfer Out / Woods Rogers PLC | 1,200.00 | | 1,240,020.86 | Legal |
| 16-Oct-2020 | 356154 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 1,239,920.86 | Wire fee |
| 31-Oct-2020 | 357781 | INT-DDI | Demand Deposit Interest 571087-304592 to Oct 31, 2020 / Demand Deposit Interest 571087-304592 to Oct 31, 2020 | | 10.54 | 1,239,931.40 | Interest Income |
| 12-Nov-2020 | 360064 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 820.00 | | 1,239,111.40 | Legal |
| 12-Nov-2020 | 360064 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 1,239,011.40 | Wire fee |
| 13-Nov-2020 | 360170 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 2,250.00 | | 1,236,761.40 | Trustee Fee or Legal Fees? |
| 13-Nov-2020 | 360170 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 1,236,661.40 | Wire fee |
| 30-Nov-2020 | 361943 | INT-DDI | Demand Deposit Interest 571087-304592 to Nov 30, 2020 / Demand Deposit Interest 571087-304592 to Nov 30, 2020 | | 10.20 | 1,236,671.60 | Interest Income |
| 16-Dec-2020 | 364756 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 34,901.93 | | 1,201,769.67 | Trustee Fee or Legal Fees? |
| 16-Dec-2020 | 364756 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 1,201,669.67 | Trustee Fee or Legal Fees? |
| 16-Dec-2020 | 364758 | WDF | Wire Transfer Out / Woods Rogers PLC | 1,600.00 | | 1,200,069.67 | Legal |
| 16-Dec-2020 | 364758 | WDF-FEE | Wire Transfer Fee / Woods Rogers PLC | 100.00 | | 1,199,969.67 | Wire fee |
| 21-Dec-2020 | 364948 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 533.00 | | 1,199,436.67 | Legal |
| 21-Dec-2020 | 364948 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 1,199,336.67 | Wire fee |
| 31-Dec-2020 | 366402 | INT-DDI | Demand Deposit Interest 571087-304592 to Dec 31, 2020 / Demand Deposit Interest 571087-304592 to Dec 31, 2020 | | 10.38 | 1,199,347.05 | Interest Income |
| 31-Jan-2021 | 371153 | INT-DDI | Demand Deposit Interest 571087-304592 to Jan 31, 2021 / Demand Deposit Interest 571087-304592 to Jan 31, 2021 | | 10.23 | 1,199,357.28 | Interest Income |
| 12-Feb-2021 | 373536 | WDF | Wire Transfer Out / Giordani Baker Grossman and Ripp LLP, Operating Acct | 948.00 | | 1,198,409.28 | Legal |
| 12-Feb-2021 | 373536 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman and Ripp LLP, Operating Acct | 100.00 | | 1,198,309.28 | Wire Fee |
| 28-Feb-2021 | 375268 | INT-DDI | Demand Deposit Interest 571087-304592 to Feb 28, 2021 / Demand Deposit Interest 571087-304592 to Feb 28, 2021 | | 9.24 | 1,198,318.52 | Interest Income |
| 01-Mar-2021 | 374380 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 3,670.23 | | 1,194,648.29 | Trustee Fee or Legal Fees? |
| 01-Mar-2021 | 374380 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 1,194,548.29 | Wire fee |
| 31-Mar-2021 | 380046 | INT-DDI | Demand Deposit Interest 571087-304592 to Mar 31, 2021 / Demand Deposit Interest 571087-304592 to Mar 31, 2021 | | 10.23 | 1,194,558.52 | Interest Income |
| 21-May-2021 | 386451 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 2,163.00 | | 1,192,395.52 | Legal |
| 21-May-2021 | 386451 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,192,295.52 | Wire fee |
| 10-Jun-2021 | 390122 | WDF | Wire Transfer Out / Forbes Hare Trust Company Limited | 1,530.00 | | 1,190,765.52 | Trust Protector Fee |
| 10-Jun-2021 | 390122 | WDF-FEE | Wire Transfer Fee / Forbes Hare Trust Company Limited | 100.00 | | 1,190,665.52 | Wire fee |
| 25-Jun-2021 | 391168 | DPF | Wire Transfer In / Bluetech Irrevocale Trust | | 1,428.00 | 1,192,093.52 | Don't know |
| 25-Jun-2021 | 391168 | DPF-FEE | Wire Transfer Fee / Bluetech Irrevocale Trust | 20.00 | | 1,192,073.52 | Wire fee |
| 28-Jun-2021 | 391290 | WDF | Wire Transfer Out / Forbes Hare Trust Company Limited | 1,530.00 | | 1,190,543.52 | Trust Protector Fee |
| 28-Jun-2021 | 391290 | WDF-FEE | Wire Transfer Fee / Forbes Hare Trust Company Limited | 100.00 | | 1,190,443.52 | Wire fee |
| 05-Jul-2021 | 393747 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 414.00 | | 1,190,029.52 | Trustee Fee or Legal Fees? |
| 05-Jul-2021 | 393747 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 1,189,929.52 | Wire fee |

| Date | Ref | Type | Description | Debit | Credit | Balance | Note |
|------|-----|------|-------------|-------|--------|---------|------|
| 15-Jul-2021 | 394465 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 560.50 | | 1,189,369.02 | Legal |
| 15-Jul-2021 | 394465 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,189,269.02 | Wire fee |
| 23-Jul-2021 | 394977 | WDF | Wire Transfer Out / Woods Rogers Plc | 1,550.00 | | 1,187,719.02 | Legal |
| 23-Jul-2021 | 394977 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 1,187,619.02 | Wire fee |
| 25-Aug-2021 | 398645 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 6,713.50 | | 1,180,905.52 | Legal |
| 25-Aug-2021 | 398645 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,180,805.52 | Wire fee |
| 28-Sep-2021 | 403489 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 4,898.45 | | 1,175,907.07 | Trustee Fee or Legal Fees? |
| 28-Sep-2021 | 403489 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 1,175,807.07 | Wire fee |
| 28-Sep-2021 | 403491 | WDF | Wire Transfer Out / Woods Rogers Plc | 3,650.00 | | 1,172,157.07 | Legal |
| 28-Sep-2021 | 403491 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 1,172,057.07 | Wire fee |
| 14-Oct-2021 | 406716 | WDF | Wire Transfer Out / Woods Rogers Plc | 2,900.00 | | 1,169,157.07 | Legal |
| 14-Oct-2021 | 406716 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 1,169,057.07 | Wire fee |
| 22-Oct-2021 | 407544 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 5,846.50 | | 1,163,210.57 | Legal |
| 22-Oct-2021 | 407544 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,163,110.57 | Wire fee |
| 05-Nov-2021 | 410412 | WDF | Wire Transfer Out / Rivero Mestre Llp-Iota Trust Account | 20,000.00 | | 1,143,110.57 | Legal |
| 05-Nov-2021 | 410412 | WDF-FEE | Wire Transfer Fee / Rivero Mestre Llp-Iota Trust Account | 100.00 | | 1,143,010.57 | Wire fee |
| 18-Nov-2021 | 411393 | WDF | Wire Transfer Out / Woods Rogers Plc | 54,672.50 | | 1,088,338.07 | Legal |
| 18-Nov-2021 | 411393 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 1,088,238.07 | Wire fee |
| 23-Nov-2021 | 411617 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 13,331.37 | | 1,074,906.70 | Legal |
| 23-Nov-2021 | 411617 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,074,806.70 | Wire fee |
| 18-Jan-2022 | 420271 | WDF | Wire Transfer Out / Forbes Hare Trust Company Limited | 1,530.00 | | 1,073,276.70 | Trust Protector Fee |
| 18-Jan-2022 | 420271 | WDF-FEE | Wire Transfer Fee / Forbes Hare Trust Company Limited | 100.00 | | 1,073,176.70 | Wire fee |
| 19-Jan-2022 | 420395 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 12,765.50 | | 1,060,411.20 | Legal |
| 19-Jan-2022 | 420395 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,060,311.20 | Wire fee |
| 26-Jan-2022 | 420889 | WDF | Wire Transfer Out / Rivero Mestre Llp | 7,347.50 | | 1,052,963.70 | Legal |
| 26-Jan-2022 | 420889 | WDF-FEE | Wire Transfer Fee / Rivero Mestre Llp | 100.00 | | 1,052,863.70 | Wire fee |
| 26-Jan-2022 | 420972 | WDF | Wire Transfer Out / Woods Rogers Plc | 83,887.50 | | 968,976.20 | Legal |
| 26-Jan-2022 | 420972 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 968,876.20 | Wire fee |
| 03-Feb-2022 | 423374 | DPF | Wire Transfer In / Eventide Credit Acquisitions Llc | 20.00 | 18,486.20 | 987,362.40 | Indemnity fulfillment? |
| 03-Feb-2022 | 423374 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions Llc | 20.00 | | 987,342.40 | Wire fee |
| 03-Feb-2022 | 423375 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 55,548.59 | 1,042,890.99 | Indemnity fulfillment? |
| 03-Feb-2022 | 423375 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 1,042,870.99 | Wire fee |
| 10-Feb-2022 | 423938 | WDF | Wire Transfer Out / Starr Accounting Services Llp | 5,370.00 | | 1,037,500.99 | CPA Firm |
| 10-Feb-2022 | 423938 | WDF-FEE | Wire Transfer Fee / Starr Accounting Services Llp | 100.00 | | 1,037,400.99 | Wire fee |
| 17-Feb-2022 | 424563 | XFR | Transfer from 571086-001 / Distribution | | 2,000,000.00 | 3,037,400.99 | BWH Distribution |
| 18-Feb-2022 | 424659 | XFR | Transfer to 571282-001 / Transfer From Bluetech Irrevocable Trust | 2,000,000.00 | | 1,037,400.99 | Pay Down Capstone Note |
| 18-Feb-2022 | 424659 | XFR-FEE | Wire Transfer Fee / Transfer From Bluetech Irrevocable Trust | 20.00 | | 1,037,380.99 | Wire Fee |
| 02-Mar-2022 | 427962 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 18,486.20 | 1,055,867.19 | Indemnity fulfillment? |
| 02-Mar-2022 | 427962 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 1,055,847.19 | Wire Fee |
| 04-Mar-2022 | 427577 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 2,115.00 | | 1,053,732.19 | Legal |
| 04-Mar-2022 | 427577 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 1,053,632.19 | Wire fee |
| 04-Mar-2022 | 427592 | WDF | Wire Transfer Out / Woods Rogers Plc | 900.00 | | 1,052,732.19 | Legal |
| 04-Mar-2022 | 427592 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 1,052,632.19 | Wire fee |
| 10-Mar-2022 | 428136 | XFR | Transfer from 571282-001 / Loan Draw-Down | | 800,000.00 | 1,852,632.19 | Draw from Capstone |
| 10-Mar-2022 | 428137 | XFR | Transfer from 571086-001 / Capital Distribution | | 1,100,000.00 | 2,952,632.19 | BWH Distribution |
| 14-Mar-2022 | 428634 | WDF | Wire Transfer Out / Eventide Credit Acquisitions Llc | 2,800,000.00 | | 152,632.19 | Funded Eventide Draw - litigation funding |
| 14-Mar-2022 | 428634 | WDF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions Llc | 300.00 | | 152,332.19 | Wire fee |
| 31-Mar-2022 | 431121 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 152,282.19 | Fee |
| 13-Apr-2022 | 433651 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Account | 4,024.00 | | 148,258.19 | Legal |
| 13-Apr-2022 | 433651 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Account | 100.00 | | 148,158.19 | Wire fee |
| 27-Apr-2022 | 434647 | WDF | Wire Transfer Out / Rivero Mestre Llp- Operating Account | 16,498.47 | | 131,659.72 | Legal |
| 27-Apr-2022 | 434647 | WDF-FEE | Wire Transfer Fee / Rivero Mestre Llp- Operating Account | 100.00 | | 131,559.72 | Wire fee |
| 30-Apr-2022 | 435882 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 131,509.72 | Fee |
| 31-May-2022 | 439930 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 131,459.72 | Fee |

| Date | Ref | Type | Description | Amount | Amount2 | Balance | Note |
|---|---|---|---|---|---|---|---|
| 23-Jun-2022 | 443658 | WDF | Wire Transfer Out / Woods Rogers Plc | 700.00 | | 130,759.72 | Legal |
| 23-Jun-2022 | 443658 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 130,659.72 | Wire fee |
| 29-Jun-2022 | 444116 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 19,337.35 | | 111,322.37 | Trustee Fee or Legal Fees? |
| 29-Jun-2022 | 444116 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 111,222.37 | Wire fee |
| 29-Jun-2022 | 444121 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp-Operating Acct | 2,153.00 | | 109,069.37 | Legal |
| 29-Jun-2022 | 444121 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp-Operating Acct | 100.00 | | 108,969.37 | Wire fee |
| 30-Jun-2022 | 444954 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 108,919.37 | Fee |
| 19-Jul-2022 | 447779 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp-Operating Acct | 2,661.00 | | 106,258.37 | Legal |
| 19-Jul-2022 | 447779 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp-Operating Acct | 100.00 | | 106,158.37 | Wire fee |
| 31-Jul-2022 | 449549 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 106,108.37 | Fee |
| 29-Aug-2022 | 453162 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 1,711.00 | | 104,397.37 | Legal |
| 29-Aug-2022 | 453162 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 104,297.37 | Wire fee |
| 31-Aug-2022 | 453999 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 104,247.37 | Fee |
| 29-Sep-2022 | 458001 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp Operating Acc | 1,869.50 | | 102,377.87 | Legal |
| 29-Sep-2022 | 458001 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp Operating Acc | 100.00 | | 102,277.87 | Wire fee |
| 30-Sep-2022 | 459133 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 102,227.87 | Fee |
| 05-Oct-2022 | 462197 | WDF | Wire Transfer Out / Wood Rogers PLC | 2,300.00 | | 99,927.87 | Legal |
| 05-Oct-2022 | 462197 | WDF-FEE | Wire Transfer Fee / Wood Rogers PLC | 100.00 | | 99,827.87 | Wire fee |
| 06-Oct-2022 | 460730 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 6,153.05 | | 93,674.82 | Trustee Fee or Legal Fees? |
| 06-Oct-2022 | 460730 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 93,574.82 | Wire fee |
| 25-Oct-2022 | 462162 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 4,223.00 | | 89,351.82 | Legal |
| 25-Oct-2022 | 462162 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct? | 100.00 | | 89,251.82 | Wire fee |
| 31-Oct-2022 | 463399 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 89,201.82 | Fee |
| 22-Nov-2022 | 466263 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp | 1,003.00 | | 88,198.82 | Legal |
| 22-Nov-2022 | 466263 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp | 100.00 | | 88,098.82 | Wire fee |
| 30-Nov-2022 | 467488 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 88,048.82 | Fee |
| 02-Dec-2022 | 468564 | XFR | Transfer to  571282-001 / Repayment Of Promissory Note Dated 01.12.2019 | 29,618.91 | | 58,429.91 | Paid down Capstone Note |
| 02-Dec-2022 | 468564 | XFR-FEE | Wire Transfer Fee / Repayment Of Promissory Note Dated 01.12.2019 | 20.00 | | 58,409.91 | Fee |
| 23-Dec-2022 | 471032 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct | 11,589.00 | | 46,820.91 | Legal |
| 23-Dec-2022 | 471032 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct | 100.00 | | 46,720.91 | Wire Fee |
| 31-Dec-2022 | 472589 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 46,670.91 | Fee |
| 06-Jan-2023 | 474268 | WDF | Wire Transfer Out / Woods Rogers Plc | 21,733.87 | | 24,937.04 | Legal |
| 06-Jan-2023 | 474268 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 24,837.04 | Wire Fee |
| 24-Jan-2023 | 475606 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Acct | 6,038.00 | | 18,799.04 | Legal |
| 24-Jan-2023 | 475606 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Acct | 100.00 | | 18,699.04 | Wire Fee |
| 31-Jan-2023 | 477308 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 18,649.04 | Fee |
| 17-Feb-2023 | 479692 | WDF | Wire Transfer Out / Brian Mason | 920.00 | | 17,729.04 | Legal |
| 17-Feb-2023 | 479692 | WDF-FEE | Wire Transfer Fee / Brian Mason | 100.00 | | 17,629.04 | Wire fee |
| 28-Feb-2023 | 481414 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 17,579.04 | Fee |
| 28-Mar-2023 | 485033 | XFR | Transfer from  571086-001 | | 70,000.00 | 87,579.04 | BWH Distribution |
| 31-Mar-2023 | 486336 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 87,529.04 | Fee |
| 04-Apr-2023 | 487832 | XFR | Transfer from  571282-001 / Loan Draw Down | | 99,477.67 | 187,006.71 | Capstone Draw |
| 05-Apr-2023 | 488295 | WDF | Wire Transfer Out / Woods Rogers Plc | 55,117.50 | | 131,889.21 | Legal |
| 05-Apr-2023 | 488295 | WDF-FEE | Wire Transfer Fee / Woods Rogers Plc | 100.00 | | 131,789.21 | Wire fee |
| 11-Apr-2023 | 488643 | WDF | Wire Transfer Out / Forbes Hare Trust Company Limited | 1,680.00 | | 130,109.21 | Trust Protector Fee |
| 11-Apr-2023 | 488643 | WDF-FEE | Wire Transfer Fee / Forbes Hare Trust Company Limited | 100.00 | | 130,009.21 | Wire fee |
| 11-Apr-2023 | 488734 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp Llp, Operating Account | 54,935.50 | | 75,073.71 | Legal |
| 11-Apr-2023 | 488734 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp Llp, Operating Account | 100.00 | | 74,973.71 | Wire fee |
| 12-Apr-2023 | 488810 | WDF | Wire Transfer Out / Loeb and Loeb LLP | 10,543.00 | | 64,430.71 | Legal |
| 12-Apr-2023 | 488810 | WDF-FEE | Wire Transfer Fee / Loeb and Loeb LLP | 100.00 | | 64,330.71 | Wire fee |
| 30-Apr-2023 | 490990 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 64,280.71 | Fee |
| 17-May-2023 | 493931 | WDF | Wire Transfer Out / Wood Rogers Vandeventer Black Plc | 18,425.00 | | 45,855.71 | Legal |
| 17-May-2023 | 493931 | WDF-FEE | Wire Transfer Fee / Wood Rogers Vandeventer Black Plc | 100.00 | | 45,755.71 | Wire fee |
| 17-May-2023 | 493935 | WDF | Wire Transfer Out / Rivero Mestre Llp-Operating Account | 18,763.30 | | 26,992.41 | Legal |

| Date | Ref | Code | Description | Amount | Amount | Balance | Note |
|---|---|---|---|---|---|---|---|
| 17-May-2023 | 493935 | WDF-FEE | Wire Transfer Fee / Rivero Mestre Llp-Operating Account | 100.00 | | 26,892.41 | Wire fee |
| 31-May-2023 | 496249 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 26,842.41 | Fee |
| 02-Jun-2023 | 497644 | WDF | Wire Transfer Out / Brian Mason | 12,362.50 | | 14,479.91 | Legal |
| 02-Jun-2023 | 497644 | WDF-FEE | Wire Transfer Fee / Brian Mason | 100.00 | | 14,379.91 | Wire fee |
| 16-Jun-2023 | 499018 | DPF | Wire Transfer In / Eventide Credit Acquisitions LLC | | 99,955.00 | 114,334.91 | Loan Payment from Eventide |
| 16-Jun-2023 | 499018 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions LLC | 20.00 | | 114,314.91 | Wire fee |
| 20-Jun-2023 | 499447 | WDF | Wire Transfer Out / Woods Rogers Vandeventer Black Plc | 54,662.78 | | 59,652.13 | Legal |
| 20-Jun-2023 | 499447 | WDF-FEE | Wire Transfer Fee / Woods Rogers Vandeventer Black Plc | 100.00 | | 59,552.13 | Wire fee |
| 20-Jun-2023 | 499452 | WDF | Wire Transfer Out / Rivero Mestre Llp Operating Account | 31,478.60 | | 28,073.53 | Legal |
| 20-Jun-2023 | 499452 | WDF-FEE | Wire Transfer Fee / Rivero Mestre Llp Operating Account | 100.00 | | 27,973.53 | Wire fee |
| 30-Jun-2023 | 501328 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 27,923.53 | Fee |
| 13-Jul-2023 | 503208 | DPF | Wire Transfer In / Eventide Credit Acquisitions Llc | | 49,955.00 | 77,878.53 | Loan Payment from Eventide |
| 13-Jul-2023 | 503208 | DPF-FEE | Wire Transfer Fee / Eventide Credit Acquisitions Llc | 20.00 | | 77,858.53 | Wire fee |
| 18-Jul-2023 | 503760 | WDF | Wire Transfer Out / Woods Rogers Vandeventer Black Plc | 58,911.28 | | 18,947.25 | Legal |
| 18-Jul-2023 | 503760 | WDF-FEE | Wire Transfer Fee / Woods Rogers Vandeventer Black Plc | 100.00 | | 18,847.25 | Wire fee |
| 18-Jul-2023 | 503762 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 17,000.00 | | 1,847.25 | Trustee Fee or Legal Fees? |
| 18-Jul-2023 | 503762 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 1,747.25 | Wire fee |
| 31-Jul-2023 | 505562 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 1,697.25 | Fee |
| 22-Aug-2023 | 508581 | XFR | Transfer from  571282-001 / Transfer From Capstone Irrevocable Trust | | 200,000.00 | 201,697.25 | Capstone Draw |
| 31-Aug-2023 | 509955 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 201,647.25 | Wire fee |
| 07-Sep-2023 | 511865 | WDF | Wire Transfer Out / Brian Mason | 3,450.00 | | 198,197.25 | Legal |
| 07-Sep-2023 | 511865 | WDF-FEE | Wire Transfer Fee / Brian Mason | 100.00 | | 198,097.25 | Wire fee |
| 07-Sep-2023 | 511867 | WDF | Wire Transfer Out / Rivero Mestre Llp Operating Account | 10,920.50 | | 187,176.75 | Legal |
| 07-Sep-2023 | 511867 | WDF-FEE | Wire Transfer Fee / Rivero Mestre Llp Operating Account | 100.00 | | 187,076.75 | Wire fee |
| 07-Sep-2023 | 511934 | WDF | Wire Transfer Out / Woods Rogers Vandeventer Black Plc | 14,591.58 | | 172,485.17 | Legal |
| 07-Sep-2023 | 511934 | WDF-FEE | Wire Transfer Fee / Woods Rogers Vandeventer Black Plc | 100.00 | | 172,385.17 | Wire fee |
| 26-Sep-2023 | 513649 | WDF | Wire Transfer Out / Rivero Mestre LLP Operating Account | 6,710.00 | | 165,675.17 | Legal |
| 26-Sep-2023 | 513649 | WDF-FEE | Wire Transfer Fee / Rivero Mestre LLP Operating Account | 100.00 | | 165,575.17 | Wire fee |
| 26-Sep-2023 | 513651 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 37,186.11 | | 128,389.06 | Trustee Fee or Legal Fees? |
| 26-Sep-2023 | 513651 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 128,289.06 | Wire fee |
| 26-Sep-2023 | 513653 | WDF | Wire Transfer Out / Giordani Baker Grossman And Ripp LLP, Operating Account | 51,664.50 | | 76,624.56 | Legal |
| 26-Sep-2023 | 513653 | WDF-FEE | Wire Transfer Fee / Giordani Baker Grossman And Ripp LLP, Operating Account | 100.00 | | 76,524.56 | Wire fee |
| 29-Sep-2023 | 514135 | WDF | Wire Transfer Out / Freeman Law, Pllc | 25,000.00 | | 51,524.56 | Legal |
| 29-Sep-2023 | 514135 | WDF-FEE | Wire Transfer Fee / Freeman Law, Pllc | 100.00 | | 51,424.56 | Wire fee |
| 30-Sep-2023 | 515516 | FEE-AUC | Monthly Administration Fee 571087-304592 / Fee | 50.00 | | 51,374.56 | fee |
| 06-Oct-2023 | 516910 | WDF | Wire Transfer Out / Asiaciti Trust Pacific Limited | 31,830.62 | | 19,543.94 | Trustee Fee or Legal Fees? |
| 06-Oct-2023 | 516910 | WDF-FEE | Wire Transfer Fee / Asiaciti Trust Pacific Limited | 100.00 | | 19,443.94 | Wire fee |
| 06-Oct-2023 | 516912 | WDF | Wire Transfer Out / Freeman Law, Pllc | 19,243.94 | | 200.00 | Legal |
| 06-Oct-2023 | 516912 | WDF-FEE | Wire Transfer Fee / Freeman Law, Pllc | 100.00 | | 100.00 | Wire fee |
| 06-Oct-2023 | 516913 | FEE-AMF | Administration Fee / Account Closure Fee | 100.00 | | 0.00 | Fee |
| | | | Account 571087-001 | 7,434,583.01 | 6,525,462.84 | 0.00 | |

# SOFA Q#25, 29

# OBLIGATIONS OF CHAPTER 11 CASES
# ACKNOWLEDGEMENT OF RECEIPT

I acknowledge that I have received a copy of *Guidelines for Chapter 11 Cases* ("Guidelines") and that I have or will review it thoroughly and comply with same.

I acknowledge that on this day I attended the initial debtor interview conducted by a Bankruptcy Analyst of the U.S. Trustee's office, and that the obligations of a Chapter 11 debtor-in-possession were reviewed as summarized below and that I fully understand these obligations:

1. As outlined in Section II of the Guidelines, I will provide the documents required for the initial debtor interview and any additional documents requested to the U.S. Trustee's office within a reasonable time period.

2. As outlined in Section III, I and my attorney will attend the initial creditors meeting which has been scheduled for ___December 8, 2023 at 9:30 AM___. I understand that in the Northern District my attorney is responsible for the timely mailing of notice to creditors.   If I am an individual, I will bring to the meeting of creditors (a) proof of my identity and (b) proof of my social security number.

3. As outlined in Section V, I will file the schedules and statement of financial affairs or file an extension by the deadline set by the Bankruptcy Court ("Court") which is ___October 23, 2023___.

4. As outlined in Section VI, I have or will close all existing bank accounts and move those funds into debtor-in-possession accounts that I have opened.  I will forward original voided checks to the U.S. Trustee's office for each account that has been set up with the required styling.

5. As outlined in Section VII, I will add the U.S. Trustee as a notified party on my insurance policies, maintain appropriate insurance coverage, and provide the U.S. Trustee's office with updated declaration pages when policies are renewed.

6. As outlined in Section VIII, I will timely file operating reports by the 20th of the month following the reporting period.  (Reports are filed monthly pre-confirmation and quarterly post-confirmation).

7. As outlined in Section IX, I will pay my quarterly fees.  I understand that if I do not pay my quarterly fees timely, then we, the Office of the U.S. Trustee, may move to dismiss, convert, have a trustee appointed, or delay confirmation.  In addition, we will charge interest and may refer the quarterly fees to the U.S. Treasury for collection.

8. As outlined in Section X, I understand that there are rules and guidelines that I must adhere to with regard to the employment of professionals and that I cannot pay them without Court authority.

9. As outlined in Section XI, I understand that there are exclusivity periods and statutory deadlines that I must adhere to when I file my disclosure statement and plan.

10. **I understand that if I fail to abide by these Guidelines the U.S. Trustee may bring a motion before the Court requesting to have the case dismissed, converted to Chapter 7, or to have a trustee appointed.**

Case Name: ___BWH Texas, LLC___        Case Number: ___23-43085-mxm11___

Debtor Interview Conducted By: _____        Date: _____

X _____        Date: ___October 13, 2023___
Signature of Debtor or Authorized Representative

Print Name: ___Matt Martorello___        Title: ___President of its Manager___

# EXHIBIT A

1) 7/18/12 Matt transferred 70% of shares in Bellicose VI, Inc. to 7X.

2) Early 2013, Bellicose VI, Inc. converted to an LLC and created Class A equity interest (100% BWH) and Class A economic interest (70% 7X and 30% MBMS)



Changes made after 6/1/13

1) On 7/22/13, IFI Inc. was merged into IFI LLC (a DE LLC).   The surviving entity name is Iron Fence Investments, LLC.

2) On 7/23/13 SunUp Financial was formed.

3) On 8/28/13, AOI, ATC, ICA, SPVI and GKM were converted to DE LLCs.



Changes made on 12/31/13:

  1) Bluetech purchases ATC from BVI.

  2) 7X Services tranfers its BVI interests to ATC.  7X Services is then dissolved.

  3) Breakwater transfers its BVI membership interests to ATC.

Structure after changes are made:



Changes made on 1/1/14:
1) Initial Bellicose Capital Operating Agreement is created and BC begins operations in PR.  JM owns 10% Cl. B Economic Interests.
2) SPVI and ICA interests transferred to BC from BVI.
3) 75% of GKT Cl. A Membership Interests transferred from GKH to BC.
4) GKM interests transferred from BVI to Green Key Holdings.
5) On 1/29/14, Dorado Analytics formed.

Structure after changes are made:



On 7/1/14:

1) Bellicose Capital creates Class A (Bellicose Capital assets other than Classes B and C), Class B (SPVI profits), and Class C (GKT profits) membership interests.

2) Class A interests are issued as follows: Class A voting (100% ATC); Class A economic (70% ATC; 30% MBMS); Class A equity (100% ATC)

Class B interests are issued as follows: Class B economic (60% ATC; 25.5% MBMS; 10% Justin Martorello; 1.5% Brian McFadden; 1.5% James Dowd; 1.5% Simon Liang)

Class C interests are issued as follows: Class C economic and equity (ATC 80%; 20% Justin Martorello)



Case 3:17-cv-00461-REP Document 302-1 Filed 07/30/20 Page 7 of 20 PageID# 28849

1) On 8/28/2014 Colossus Holdings, LLC is formed.
2) On 9/2/2014 Braviant, LLC is formed.
3) On 10/1/14 Kairos Holdings is formed.
4) MM transferred to a group of minority holders 6.49% ownership in SunUp Financial, LLC.
5) On 11/30/14 Alpha One Investments is dissolved.



On 12/17/14
1) GKT interests transferred from BC to ATC.
On 1/1/15:
1) 20% Cl. A Membership Interests in DA transferred to JM.
2) GKT interests transferred from ATC to DA.
3) On January 5, 2015, Chorus Credit, LLC (DE LLC) was formed (wholly owned by MM).
4) On January 14th, 2015, Liont LLC was formed (wholly owned by MM).



1) 2/9/15
ECA formed by Kairos as voting and majority member, naming Liont as manager

2) On 2/27/15:
ICA interests transferred from BC to KH.

3) On 2/28/15:
DA interests transferred from BC to KH.

Structure after changes are made:



On 3/1/15:
1) 0.5% Cl. B Economic Interests in BC transferred to Brian McFadden from ATC for a total of 2.0%
2) All remaining BC interests owned by ATC transferred to KH.
3) All BC interests owned by MBMS transferred to Liont.
On 3/2/15:
1) KH issued 25.5% Cl. B Equity interest to Liont pursuant to Service and Membership Interest Transfer Agreement

Structure after changes are made:





On 3/13/15:
1) IFI merged into BC.
2) ATC merged into BC. BVI is now owned by BC.
3) MBMS merged into BC.
On 4/30/15
4) GKH dissolved.
5) GKM dissolved.
     Structure after changes are made:

On 6/30/15:
1) SP LLC was transferred to Breakwater Holdings by KH.
2) PB Gaming was transferred from KH to Breakwater Holdings.
3) Dorado Analytics was transferred by KH to BWH.
4) On June 8, 2015, Gallant Capital, LLC was formed.
5) On June 18, 2015 Kairos PR, LLC was formed.



1) On July 1, 2015 BTIT contributed all membership interest of KH to KPR for PR Act 20 purposes for all subs.
2) On July 1, 2015 Liont transferred its ownership of Bellicose Capital to Gallant Capital (Cl. A economic 30% and Cl. B economic and equity 25.5%).
3) On July 12, 2015 Liont was assigned as a subsidiary of Kairos Holdings to qualify for PR Act 20 status for it staff.
4) Jet Business Loans and Promovere established.



1) On 7/15/2015 KH transferred a 25.5% equity and economic interest in ECA into GC LLC.
2) MM transferred Chorus Credit to Colossus Holdings (later changed its name to Braviant Holdings 10/2015)
3) On 7/31/2015 Gallant PR LLC (hybrid) is formed.
4) On 7/31/2015 GC LLC assigns its ownership in BC into GPR LLC for PR Act 20 purposes.



Case 3:17-cv-00461-REP Document 902-1 Filed 07/30/20 Page 15 of 20 PageID# 28857

1) On 11/01/2015 MM transferred his membership interest in SunUp Financial, LLC to Braviant Holdings, LLC.
2) On 12/18/2015, Blue Horizon Casino Cruises, LLC was formed and owned by Palm Beach Gaming, LLC
3) On 12/31/2015, Justin Martorello assigned 0.1% Cl. B equity and economic interest in Bellicose Capital, LLC and 0.1% economic and equity interest in Eventide Credit Acquisitions, LLC to Kairos Holdings, LLC.



1) On January 1, 2016, Kairos Holdings, LLC transferred its economic and equity interest in Eventide Credit Acquisitions, LLC to Breakwater Holding, LLC.
2) On January 26, 2016, the following events took place with respect to Bellicose Capital, LLC and its subsidiaries.
    1) At 7:37 p.m., Bellicose VI, LLC merged with and into SourcePoint VI, LLC, under the name of SourcePoint VI, LLC.
    2) At 11:55 p.m., SourcePoint VI, LLC merged with and into Bellicose Capital, LLC, under the name of Bellicose Capital, LLC.
    3) At 11:59 p.m., Bellicose Capital, LLC merged with and into "LVD Tribal Acquisition Company, LLC", under the name of LVD Tribal Acquisition Company, LLC.



1) Braviant made several stock grants in June and July 2016.
2) On 8/18/2016, Matt transferred his shares in Promovere to Braviant Holdings, LLC.
3) On August 23, 2016, Braviant Consumer, LLC was formed as a Delaware limited liability
4) Gallant PR, LLC was dissolved effectively on 12/29/2016.
5) Kairos PR, LLC was dissolved effectively on 3/30/2017.





3) New Summit, LLC was formed in June 2017.  This entity is personally owned by MM.

4) In June 12, 2017, Braviant Holdings, LLC transferred its membership interest in Jet Capital, LLC to MM.

5) In June 12, 2017, Braviant Holdings, LLC transferred its membership interest in SunUp Financial, LLC and Chorus Credit, LLC to Braviant Consumer, LLC.



1) 4/9/18 Kairos transferred Liont to MM
2) PBG, ICA, and SP all dissolved during 2018.
3) Kairos dissolved May 2019



1) 4/25/18 Matt transferred 15% of Gallant Capital to Matorello Investments, LP.
2) 8/1/18 Martorello Investments, LP contributed its 15% interest in Gallant Capital to its wholly-owned holding company, Gallant Distributions, LLC



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| LULA WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-cv-461 (REP) |
| | ) | |
| BIG PICTURE LOANS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| RENEE GALLOWAY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:18-cv-406 (REP) |
| | ) | |
| BIG PICTURE LOANS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MATT MARTORELLO'S STATEMENT OF POSITION
## IN RESPONSE TO JULY 23, 2020 ORDER (PARAGRAPH 2)

On July 23, 2020, the Court issued an Order (*Williams*, ECF No. 880; *Galloway*, ECF

No. 539) directing the parties to, among other things, file on or before this date "in both listed

actions a chart (a) showing how and through which trusts, corporations, people, or other entities

money flows through from the time a borrower makes a payment until the money is distributed

to Martorello and others; (b) describing all trusts, corporations, people, or other entities involved

in these transactions and how each trust, corporation, person, or other entity relate to each other;

and (c) explaining what Martorello's interest, involvement, or relationship is as to each trust,

corporation, person, or entity." *Id*. ¶ 2.  Further, "if the parties are unable to jointly submit the

document described in paragraph (2), the Plaintiffs shall submit their document by July 29, 2020

and Martorello shall file his proposed changes by July 30, 2020." Mr. Martorello respectfully

responds to correct Plaintiffs' submission as follows:

Due to various structural changes which occurred as a result of tax planning relating to
Martorello's move to the U.S. Virgin Islands[1], followed by a subsequent move to Puerto Rico to
participate in its Act 20 and Act 22 economic development programs, it is difficult to distill the
history of the organizational structure into one or two charts. As a result, attached as Exhibit
"A" is a series of schematic charts illustrating the organizational structure from 2012 to 2018,
which notes the restructuring events that occurred surrounding the launch of Bellicose VI and
Bellicose Capital, and the subsequent sale of the assets of Bellicose Capital (and its wholly-
owned company SourcePoint VI, LLC) to the LVD.[2] In spite of the numerous small structural

---

[1] Martorello moved to the U.S. Virgin Islands in July of 2011 to participate in its U.S.
government sanctioned economic development program (see:
https://www.usvieda.org/incentives/edc-program). In advance of doing so, he formed Bellicose
VI, Inc. as the corporate entity receiving the government decree detailing a broad mandate as to
the activities that Bellicose VI Inc. would perform. More specifically, Bellicose VI Inc., or its
successor, Bellicose VI, LLC (collectively referred to herein as "Bellicose VI"), owned interests
in companies that developed algorithms and code to create a voice transcription service used by
emergency services personnel and financial markets; a voice brokering licensed arm; a
proprietary trading arm; funded a debt investment in a maritime operation; a slot lease
arrangement with a tribal casino; managing and ownership of a casino cruise ship; and providing
management and investment services to related entities. See Ex. B, N.D. Tex. May 28, 2020
Hrg. Tr. at 138:15-141:6, where Martorello describes to the Court the breadth of "family office"
Bellicose Capital and its various US investments and ventures.

[2] The primary restructurings can be summarized as follows: On July 18, 2012, for estate planning
and limited liability purposes, Martorello transferred 100% of the voting rights of Bellicose VI to
Breakwater and 70% of the economic rights to 7X Services, LLC, both wholly-owned by the
Trust. On December 31, 2012, Bellicose VI Inc. converted to an LLC for tax efficiency purposes.
On January 1, 2014, the structure changed to accommodate the Martorellos' relocation from the
U.S. Virgin Islands to Puerto Rico, where he received an Act 20 and Act 22 economic
development decree from the Puerto Rican government, through Bellicose VI, and kept an office
in St. Croix, U.S. Virgin Islands as well (see: https://www.ddec.pr.gov/wp-
content/uploads/2019/11/Performance_of_Incentives_Report-Act_20_and_Act_22.pdf). In June
of 2015, Bellicose ownership for the trust and Martorello each changed to a hybrid LLC (i.e.
taxed as a corporation on Puerto Rico sourced income and disregarded on US sourced income) in
the form of Kairos PR, LLC and Gallant PR, LLC. In preparation for the sale of Bellicose
Capital, LLC (which housed the employees central to the performance of SourcePoint VI)
*Footnote continues….*

changes over time, the common general ownership structure of Bellicose VI, Bellicose Capital, and Eventide Credit Acquisitions remained virtually the same from July 2012 to present.[3]  The details of the ownership structure are discussed in thorough detail below, but first we will address the money flows.

**Discussion of how and through which trusts, corporations, people, or other entities money flows through from the time a borrower makes a payment until the money is distributed to Martorello and others**

When a consumer made a loan payment to Red Rock Tribal Lending ("RRTL"), the interest received was recognized as revenue to RRTL, while the principal either stayed in cash in RRTL for RRTL's growth, or reduced one of the debt facilities of the Tribe (See ECF 565-1, detailing the funding of RRTL's debt capital as ultimately sourced from third parties nearly entirely at all times, with some exception early in the relationship where Bellicose made a minority co-investment).  In other words, the Tribe could decide to pay debt to third parties that it owed in connection with the lending business.  As can be seen below, payments from that

---

Bellicose Capital had to migrate out of the family office all entities, data, information, and IP that were not a part of what the Tribe was purchasing, which included sensitive personal and family information, and that of Martorello's partners (see Ex. C (with personal information redacted).  From time to time, restructurings occurred in to segregate entities with U.S. sourced income in one segment of the organizational structure for simplification, and any entities with Puerto Rico sourced income in another segment.  Finally, upon relocation back to the mainland United States, the structure again changed and simplified.

[3] Notwithstanding two subsequent dilutive events impacting ownership pro rata via issuing equity to key management personnel across the first half of 2014, Bellicose VI and its successors' profits interests were generally owned 70% by Guardian Trust Corporation, as trustee of the Bluetech Irrevocable Trust, the vehicle for Martorello's estate plan (his mother, brother, and sister as initial beneficiaries, replaced by his wife and their future descendants in late 2012 after their marriage in March of 2012), and 30% by Martorello personally, through his wholly owned LLC, initially MBM Services, LLC, which was later succeeded in interest by Liont, LLC and Gallant Capital, LLC.  These distributions would amount to a substantial amount of income to Martorello personally.

3

revenue to SourcePoint VI, LLC ("SPVI") were wholly untied to the loans themselves.[4]  Rather, whether or not SPVI was paid in any given month was based on the operational success or failure of the services it provided to RRTL, and thereby related to its efforts to build the good customer list and IP of LVD's business over time (See Ex. E, Servicing Agreement at § 6.4).[5] The following are the operational steps, in order, RRTL would take in the disbursement of its revenue:

1.  RRTL would send the Tribe ("LVD") the greater of the $20,000 monthly minimum, or 2% of Gross Revenue less Bad Debt expense, as a distribution.

2.  RRTL would repay SPVI for any reimbursements advanced to it, if applicable.

3.  RRTL would pay its vendor's bills, which included marketing agencies, underwriting expenses, technology, ACH processors, bank fees, call center expense, non-SPVI related consultants, legal, accounting and audit fees, interest expense, payment to its affiliate Duck Creek for employee personnel, and miscellaneous fees.[6]  (See Ex. G, Financial

---

[4] During the Parties' attempts to reach agreement on the form of the requested charts, Martorello repeatedly emphasized that "SourcePoint VI's servicing fee was wholly untied to consumer loans, but rather predicated on the success or failure of RRTL's business."  (See Ex. D at 4; see also Ex. D at 2 ("Disagree that payment is misleading, it demonstrates the payment to SPVI, and thus to its member, were entirely untied to the consumer loans, but instead based on the performance of the tribe's business holistically.")  While Plaintiffs may take umbrage with this undisputed fact, and mischaracterize it as "misleading," they cannot dispute that given SPVI's fee and Eventide's note payment stem from the success or failure of the Tribe's bottom line, and the demonstrative variability in any given month or period of time, SPVI's payments indeed were wholly untied to the consumer loans.

[5] See Ex. F, expert report Greg Cowhey of RSM at 20 (noting the "Value Allocation to the Tribal Entity" on the date of sale as "24,729,000")..  See also Ex. G, demonstrating RRTL's spending $59 million on marketing, by date of sale, to develop its most valuable IP, its customer list.

[6] Plaintiffs mention markup at the call center and improperly characterize Iron Fence Investments Interest Income.  These had no net impact on Tribal Net Profit or Martorello's share versus the trust.  No separate hidden fees were received by Martorello outside of his 30% interest in SPVI (owned indirectly through Bellicose).  As stated above, loans made to RRTL to provide

*Footnote continues….*

4

Statements demonstrating RRTL paid $294 million in total expenses, $223 million for costs other than "Servicing Fee – SPVI"). Additionally, RRTL would retain capital for reserves if required.

4.   RRTL would pay its creditors to the extent required for either interest or principal, or reserve therefor.

5.   RRTL would pay net revenues to SPVI, in the event any such amounts remained.[7]

Once SPVI received payment, if any, from RRTL, SPVI would pay its expenses, including a fee allocated for the engagement of the employees of its parent company, Bellicose Capital, LLC, and any overhead before it would make profit distributions to its parent company, Bellicose Capital, LLC. Additional expenses of Bellicose Capital would then determine whether the services SPVI provided were profitable or not profitable to the members of Bellicose Capital.

From Bellicose Capital, disbursements of remaining cash were not formulaic, but irregular and sporadic. As a holding company and family office designed to invest in US entities (rather than distribute offshore as Plaintiffs allege the design), Bellicose focused attention on growing and diversifying its family office investments and holdings, in entirely US subsidiaries. As such, Bellicose would assess its cash liquidity, its business or investment opportunities, and existing forecasted cash requirements and then (i) choose to retain its earnings for investment

---

capital were almost entirely made from third party capital sources; to the extent a loan was made from a Trust-owned subsidiary to RRTL, the interest payments back to that entity were a debt expense to RRTL that reduced SPVI revenue, resulting in a net effect of zero.

[7] To demonstrate that no given loan could be tied to the Servicing Fees, after the launch of RRTL in January 2012, SPVI received no payment for services in January, February, March, April, May, July or September. Clearly, it received no dollars from those loans and was far from guaranteed to. And notwithstanding the ability for LVD to voluntarily terminate the contract with SPVI with just 120 days' notice to engage increasing competition to SPVI, even before many loans originated could mature, after netting SPVI's expenses and overhead allocations, SPVI lost money through its provision of services to RRTL in the year of 2012.

into new ventures, (ii) grow its businesses and its own US subsidiaries, or (iii) distribute excess funds to its members.  Any such distributions to its members were made pro rata to the members of Bellicose Capital owning economic interests: (i) 70% to the LLC owned by Guardian Trust Corporation, as trustee of the Bluetech Irrevocable Trust (the "Trust")[8] and (ii) 30% to the LLC owned by Martorello[9].  The Trust's LLC owner (also, always a Delaware LLC from January 1, 2014 to date of sale) would either invest in its own subsidiary ventures or private equity vehicles (all US entities and investments again), or make a distribution up to the Trust. Martorello's LLC owner would similarly elect to invest such distributions into his own US entities, or pay them to Martorello, who (contrary to the actions of one seeking an offshore shelter) generally reinvested them in his personally-owned interests in illiquid US start-ups he co-founded (since 2013) and other business ventures.

In 2014, the management team members of Bellicose Capital were issued their equity interests. Thereafter, distributions would additionally be made pro rata to Justin Martorello (9.9%), Brian McFadden (2%), James Dowd (1.5%) and Simon Liang (1.5%) in accordance with their ownership percentages per the operating agreement.  The Trust's LLC owner's interest was thereby diluted to 59.6% and Martorello's LLC owner's interest was thereby diluted to 25.5%.

Since the sale of the Bellicose assets (the "Bellicose Sale") to the Tribe on January 26, 2016, payments from the Tribe have followed the same formula, except that the formula was changed from $20,000 to 2% for the Tribe's distribution, plus an additional 2% to be reinvested

---

[8] The trust held its interest in Bellicose VI and Bellicose Capital from time to time through three **Delaware holding companies**: 7X Services, LLC, Alpha Tau Capital, LLC, or Kairos Holdings, LLC (or its Puerto Rico holding company, Kairos PR, LLC).

[9] Martorello held his interest in Bellicose VI and Bellicose Capital, LLC from time to time through three **Delaware holding companies**: MBM Services, LLC, Liont, LLC or Gallant Capital, LLC (or its Puerto Rico holding company, Gallant PR, LLC).

as equity capital to grow the health and self-sufficiency of LVD's lending business and move it closer to self-sufficiency. However, the LVD economy entered two periods of economic strife following the sale, and the Tribe called upon Eventide to renegotiate the distribution calculation from 2% so as to help support the Tribal members' struggle. Eventide and Martorello were eager to oblige, and increased the distribution to 3%, with a 2% retention in November 2016 (See Ex. H), and in May 2018 "in order to assist the financial needs of the Tribe, to alleviate Tribal budgetary stress and to aid the Tribe to avoid cuts to essential government services" Eventide agreed to forego the retention so that LVD could distribute a full 6% of the formula on a monthly basis and that arrangement stands today (Ex. I).

Unlike Bellicose, which was a holding company and family office, Eventide is a special purpose entity holding only the LVD debt obligation. As such, upon receipt of its note payments beginning in 2016, distributions to Eventide's members occurred regularly, pro rata, through early 2019 under the auspices of ample projected note payments based on the forecast. Since early 2019, however, upon suspicion that the borrower's material changes in lending operations and product over the years post-sale would result in a material degradation to Eventide's note payments, it ceased all distributions to its members and reserved all of its cash for legal expenses associated with the litigation.[10] Eventide's earlier distributions to Breakwater have been invested in U.S. private equity funds, with any excess being distributed up to the Trust. Eventide's distributions to Gallant Capital have been distributed to Martorello for further substantial investment in his personal US investments since 2013, including Braviant, a US start-

---

[10] Another example of the consumer loan payment being wholly untied to the payments under the waterfall methodology, which was discussed with plaintiffs the day before this filing but omitted from their brief, the Tribe has made **no payments** on the note by waterfall calculation from November of 2018 through the date of this filing.

up entity with a long-term investment horizon founded by Martorello, or used by Martorello
personally.

**Discussion describing all trusts, corporations, people, or other entities involved in these
transactions and how each trust, corporation, person, or other entity relate to each other**

Martorello, as settlor, and Guardian Trust Corporation, as trustee, established the M.
Martorello Irrevocable Trust (the "Trust"), a Cook Islands Trust, on November 1, 2010.[11]  On
June 10, 2011, by trustee resolution, the Trust name was changed to the Bluetech Irrevocable
Trust.  Prior to Martorello's marriage in March of 2012, the beneficiaries were his mother and
siblings; following his marriage and the birth of his children, the trustee added Martorello's wife
and descendants as beneficiaries.  Simultaneously with the establishment of the Trust, the trustee
created Breakwater Holding, LLC ("Breakwater"), a Cook Islands limited liability company
owned by the Trust as its sole member, for the purpose of holding assets of the Trust.
Breakwater's initial manager was ATP Directors Ltd., a director company wholly owned by
Asiaciti Trust Pacific Limited, the parent company of Guardian Trust Corporation, a duly-
licensed Cook Islands trust company.  The trust agreement of this Trust does not grant the settlor
any power, control, or authority over the Trust's administration or its assets.  The settlor's role is
limited to creating and funding the Trust.  While Plaintiffs make hay of Martorello referring to
Bellicose as "my business" (as certainly all members did) in this case, Martorello is also treated
as the grantor (or tax "owner") for U.S. federal income tax purposes, meaning that he is

---

[11] There are a variety of reasons to choose a foreign jurisdiction to administer a trust, including,
but not limited to: (i) cost efficiency vs US trustees (ii) economic diversification; (iii) access to
certain types of offshore private placement life insurance policies (for which Martorello has);
(iv) estate planning; (v) asset protection from the creditors of its beneficiaries; (vi) premarital
planning; and (vi) tax planning, if available.  Dynastic trusts are a common estate planning
vehicle that permit a settlor to transfer property to a trustee to be invested, managed, and
administered for the benefit of the settlor's family and future generations. There are many
motivations and purposes for establishing a trust, but preservation of family wealth and ensuring
financial security for the settlor's spouse and descendants is often a primary goal.

obligated to report and pay taxes on the Trust's earnings, and he in fact does so. Martorello has

never been a beneficiary of the Trust, nor has he ever received a distribution from the Trust.

Likewise, Martorello has never served as a Protector of the Trust or in any other fiduciary

capacity.[12] Assets held by the Trust or subsidiaries owned by the Trust are <u>legally</u> owned by the

trustee for the benefit of the Trust beneficiaries.[13] Assets owned by Martorello or by subsidiaries

owned by Martorello are legally owned by Martorello. Martorello's status as the grantor and tax

"owner" of the Trust does not in any way grant to him legal or beneficial ownership of, or

control over, the Trust assets; it merely indicates that he is obligated to pay the income taxes on

Trust earnings.[14] In fact, both he and the beneficiaries are powerless to compel the trustee to take

*any* action.

　　As mentioned above and generally at footnote 3, supra, the charts attached as Exhibit "A"

depict the Trust and its various subsidiaries owned from time to time, as well as entities owned

---

[12] Plaintiffs pointed out the NDTX opinion had stated that Martorello admitted he was the "protector". This was clear error of the Court. Martorello stated rather that the trust document referred to him as "principal" (See Ex. J, N.D. Tex. May 21, 2020 Hrg. Tr. at 77:22-78:2), while he also stated he has never been "protector" and there has not been since 2011 (see Ex. J at 178:3-24).

[13] To the extent that the trustee elects to make distributions to the beneficiaries of the Trust, it does so in its sole discretion, and distributions may not be made to anyone who is not a beneficiary of the Trust. The beneficiaries may not compel distributions from the trustee. The Trust is a spendthrift trust, meaning that the trustee has the power to deny requests for distributions from creditors of the beneficiaries, as well as requests for distributions from the beneficiaries themselves. The trustee can, and often does, exercise its discretion and refuse to make distributions to a beneficiary. A trustee will not distribute funds to satisfy a creditor claim of a beneficiary, particularly when doing so would harm the other current beneficiaries and future remainder beneficiaries. The trust is irrevocable, meaning that no person has the power to revoke the trust. Once the settlor transfers property to the trustee to hold in trust for the beneficiaries, the settlor relinquishes all control over the trust property and retains no beneficial rights so long as the settlor is not a beneficiary of the trust.

14 This is not optional: Section 679 of the Internal Revenue Code requires that a U.S. person who directly or indirectly transfers property to a foreign trust with at least one U.S. beneficiary shall be treated as the tax owner of the trust.

by Martorello that were involved in these transactions. From the time of the formation of Bellicose VI and Bellicose Capital leading up to the Bellicose Sale, multiple reorganizations occurred to the ownership structure to facilitate the tax planning in the U.S. Virgin Islands, followed by a reorganization for Puerto Rico tax purposes upon the Martorellos' relocation from the USVI to Puerto Rico.

Below are more granular details explaining the Trust and various entities.

- **Bluetech Irrevocable Trust** (the "Trust") was established by Matt Martorello, as grantor, and Guardian Trust Corporation, as trustee, on November 1, 2010. The beneficiaries of the Trust, since late 2012, are Rebecca Martorello and the descendants of Rebecca and Matt Martorello. **Matt Martorello was never a beneficiary of the Trust, never the protector, nor has he ever had any beneficial interest in an entity or affiliated sub-trust owned by the Trust.** The Trust's holdings include various holding companies (each described in more detail below), namely Breakwater Holding, LLC 7X Services, LLC, Alpha Tau Capital, LLC, and Kairos Holdings, LLC, and sub-trusts. All directly-owned holding companies have been dissolved except for Breakwater.

- **Guardian Trust Corporation** is a provider of professional fiduciary services and a wholly-owned subsidiary of **Asiaciti Trust Pacific Limited**, Cook Islands, the Cook Islands branch of Asiaciti Trust, an international trust and corporate services provider that has been operating in multiple jurisdictions globally (except the U.S.) for the past 40 years and oversees several billion dollars in trust and corporate assets (see www.asiacititrust.com). The current managing director of the Cook Islands operation, Ms. Tine Ponia, a New Zealand attorney, is the trust officer in charge of the Trust.

- **Breakwater Holding, LLC** ("Breakwater"), a Cook Islands LLC, was created by the

trustee simultaneously upon the establishment of the Trust, November 1, 2010, to serve as the Trust's holding company for the Trust's private company investments. From 2010 to March 2013, Breakwater's manager was ATP Directors Ltd., a special purpose company owned by the trustee to serve as corporate director and manager. The trustee later appointed Martorello's entities MBM Services, LLC and then Liont, LLC as the successor managers of Breakwater from March 2013-June 2018.  Contrary to one using offshore entities for protection, on December 31, 2013, Martorello transferred the Bellicose equity ***out*** of the Cook Islands LLC and into Delaware LLC, Alpha Tau Capital.  In June 2018, the trustee, as member, then removed Liont as manager and replaced it once again with ATP Directors Ltd. ATP Directors consulted with managers of its underlying private company investment entities, including Matt Martorello, as needed, to satisfy its fiduciary obligation to its member, the Trust.  Breakwater only **briefly** owned an interest in Bellicose VI in July of 2012 (prior to which it was owned by Martorello personally) until it transferred its interest to Delaware LLC Alpha Tau Capital in December 31, 2013. From that point on, it did not hold a direct interest in the Bellicose entities.

- **MBM Services, LLC**, a Delaware LLC, was wholly-owned by Matt Martorello and served as his management company. The trustee named MBM Services, LLC as manager of Breakwater, Bellicose Capital, LLC, Kairos Holdings, LLC, 7X Services, LLC, and Alpha Tau Capital, LLC. This allowed day-to-day oversight of the operating entities held by the Trust by MBM Services, LLC, with the help of its staff and oversight by Matt Martorello, as its manager. MBM Services, LLC was later succeeded by Liont, LLC as manager of the companies it managed. Although MBM Services and Liont, LLC handled

11

administrative and ministerial tasks for the companies they managed, substantial decisions relating to the Trust-owned private companies continued to require the consent of the trustee of the Trust, as member.

- **Liont, LLC** ("Liont"), a Delaware LLC, is the family office entity wholly-owned by Martorello and has served as manager of multiple entities, some owned by the Trust and some owned by Martorello. Liont was a successor to Martorello's initial management company, MBM Services. Liont has employed staff to facilitate with its management services. In July 2015, Matt contributed Liont (at that time it had a zero value and no assets) to Kairos to allow Liont to hire Puerto Rican employees and to qualify for Puerto Rico tax benefits as a subsidiary of Kairos PR. Upon the Martorellos' departure from Puerto Rico, Martorello repurchased Liont, LLC from Kairos, rendering Kairos obsolete and it was later dissolved.

- **Bellicose VI, Inc.** was formed in 2011 by Martorello and later restructured as **Bellicose VI, LLC** for tax purposes (collectively referred to as "Bellicose VI"). It was initially a Virgin Islands company wholly owned by Martorello personally, and was later converted to a Delaware LLC. Contrary to the mischaracterization of the Plaintiffs that Martorello had some nefarious scheme with regard to LVD's lending, Martorello engaged Bellicose VI under his personal ownership in 2011. It was not until July 18, 2012 when Martorello transferred 70% of his interest in Bellicose VI to Delaware LLC 7X Services, LLC (a wholly owned entity of the Trust). In early 2013, when Bellicose VI was converted to an LLC, it issued a Class A equity interest to Breakwater (100%, transferred a few months after to Alpha Tau Capital, a Delaware LLC described below), and Class A economic interests to Delaware LLCs 7X Services (70%) and MBM Services (30%). Bellicose VI

was later merged into Bellicose Capital, LLC in 2014 upon the companies' move from the USVI to Puerto Rico (described below).

- o 7X Services LLC held a 70% economic interest in Bellicose VI and Martorello, through MBM Services, held a 30% economic interest. 7X was wholly-owned by the Trust, so the 70% economic interest owned by 7X constituted the Trust's profits interest in Bellicose VI. The 30% economic interest held by MBM Services, LLC constituted the profits interest received by Matt Martorello for his services to Bellicose VI.

- o Bellicose VI was the initial owner, later transferred to Bellicose Capital, of a number of U.S. investments through various entities, including Alpha Tau Capital, LLC, Indian Country Analytics, LLC, Iron Fence Investments, LLC, SPVI, and Green Key Markets, LLC, the marketing arm of GreenKey Technologies, described below (all US entities).

- o On December 31, 2013, the holding structure was reorganized in conjunction with the companies' planned move to Puerto Rico and the Trust replaced 7X with Alpha Tau Capital as its new holding company for the Bellicose VI structure. The economic interest remained the same: Alpha Tau Capital (70%) and MBM Services (30%) (both Delaware LLCs).

- **Bellicose Capital, LLC**, a Delaware LLC,  was created January 2014 as a subsidiary of Alpha Tau Capital (70%) and MBM Services (30%) and began operations in Puerto Rico. Bellicose Capital had three classes of ownership interest, which is incompletely disclosed in Plaintiff's brief: Class A Members (with general rights to the assets of Bellicose Capital other than SPVI and GreenKey Technologies), divided further into voting, equity,

13

and economic interests; Class B Members (with rights to the investment in SPVI),
divided into equity and economic interests; and Class C Members (with rights to the
investment in GreenKey Technologies, LLC), divided into equity and economic interests.
The business activities of SPVI and GreenKey Technologies are described in more detail
below. Having noted the 2011 and 2012 ownership and the short duration in 2013 when
Breakwater owned Bellicose VI, the ownership of Bellicose Capital evolved as follows:

> **2014 (All US ownership)**
> Class A Members:
> *Alpha Tau Capital, LLC* ("ATC") - 100% voting; 70% economic; and
> 100% equity
> *MBM Services, LLC* ("MBMS") - 30% economic
> Class B Members:
> *ATC* - 60% economic, and 90% equity.
> *MBMS* - 30% economic.
> *Justin Martorello* - 10% economic and equity.
> Class C Members:
> *ATC* - 80% economic and equity.
> *Justin Martorello* - 20% economic and equity.
>
> **January 1, 2016 (All US Ownership)**
> Class A Members:
> *Kairos Holdings* ("KH") - 100% voting; 70% economic; and 100% equity
> *Gallant PR* ("GPR;" PR Holding company of Gallant Capital, LLC) - 30%
> economic
> Class B Members:
> *KH* - 59.6% economic, and 59.6% equity
> GPR - 25.5% economic and 25.5% equity
> *Justin Martorello* - 9.9% economic and equity
> *Brian McFadden* - 2.0% economic and equity
> *Simon Liang* - 1.5% economic and equity
> *James Dowd* - 1.5% economic and equity
> Class C Members:
> *No changes.*

o   The succession of ownership of Martorello's 30% profits interest in Bellicose

   Capital evolved as follows: MBM Services, LLC, followed by Liont, LLC,

   followed by Gallant Capital, LLC, then briefly Gallant PR, LLC. Gallant PR,

LLC was created for Puerto Rico tax purposes and briefly owned Gallant Capital. Again, all US entities. Martorello's 30% interest was diluted to 25.5% upon the issuance of equity interests to key personnel in 2014.

- o The management was initially MBM Services, LLC and later Liont, LLC.

- o Bellicose VI transferred its interest in SPVI to Bellicose Capital.

- o In January 2016, SPVI and Bellicose VI were merged into Bellicose Capital, LLC in anticipation of the Bellicose Sale, which occurred on January 26, 2016.

- **SourcePoint VI, LLC** ("SPVI"), initially a Virgin Islands LLC and later a Delaware LLC, was owned by Bellicose VI and later Bellicose Capital and managed by MBM Services and later Liont. Its business purpose was to serve as a fintech platform for lenders. Payments from RRTL were made to SPVI.

- **7X Services, LLC** ("7X"), a Delaware LLC, was wholly-owned by the Trust and was the initial owner of BVI, Inc. Its manager was MBM Services, LLC. 7X held a 70% economic interest in Bellicose VI, which interest was later transferred to Alpha Tau Capital (described below).

- **Alpha Tau Capital, LLC** ("ATC"), a Delaware LLC, was wholly-owned by the Trust and served as the Trust's holding company for investments such as Alpha One Investments and Iron Fence Investments. It also held a 70% economic interest in Bellicose VI for a time. Its manager was MBM Services, LLC.

- **Kairos Holdings, LLC** ("Kairos"), a Delaware LLC, was formed by the trustee in 2014 to serve as another holding company for the Trust's U.S. investments. It was always owned directly by the Trust, with initial management by MBM Services, LLC, followed by Liont, LLC.

o In 2014, Martorello and his family relocated to Puerto Rico and Kairos, along with its subsidiaries, were transferred to newly-formed Kairos PR, LLC for Puerto Rico tax planning purposes.

o Kairos was dissolved by its member (the trustee) in 2019, after liquidating its de minimis remaining assets following the Bellicose Sale.

- **Eventide Credit Acquisitions, LLC** ("Eventide"), a Delaware LLC, was formed February 9, 2015 for the purpose of holding the debt obligation from the LVD following the Bellicose Sale. Its initial manager was Liont, LLC and is currently Martorello. As explained above, its ownership was designed to mirror the ownership of the Class B Membership interests in Bellicose Capital. The Trust initially owned 85% of Eventide through its holding company, Kairos Holdings. Leading up to the sale, Kairos transferred a 25.5% interest in Eventide to Martorello's holding company, Gallant Capital, as payment for Martorello's efforts brokering the Bellicose Sale and to mirror the economic arrangement between Gallant Capital and Bellicose Capital, which was also 25.5%. Kairos simultaneously transferred the remaining 59.6% of its interest in Eventide to its sister subsidiary, Breakwater Holding, which was to remain as the Trust's primary holding company following the Bellicose Sale and simplification of the holding structure.

- **Gallant Capital, LLC** ("Gallant Capital"), a Delaware LLC, was formed June 30, 2015, by Martorello as member and Liont, LLC as manager, to hold Martorello's interest in Eventide. In 2018, Martorello transferred 15% of his ownership in Gallant Capital to Gallant Distributions LLC (Delaware) in turn owned by a Family Limited Partnership owned by two US trusts formed for tax planning purposes in 2018.

16

- **GreenKey Technologies, LLC** ("GreenKey"), a Delaware LLC, was created in January 2014, and Martorello is a co-founder. Its initial managing member was Bellicose Capital. Its current managing member is Dorado Analytics, LLC. GreenKey is a fintech start-up developing voice transcription technology for use in the financial sector (referred to as "Alexa for Wall Street"), as well as for 911 call centers and use by police forces.

  o Bellicose Capital purchased a 75% membership interest in GreenKey Technologies in 2014. A Class C Membership interest in Bellicose Capital was formed to segregate GreenKey's profits from those of SPVI and Bellicose Capital. The Class C Members were the Trust (through Alpha Tau Capital) (80%) and Justin Martorello (20%).

  o In January 2015, Justin Martorello and Bellicose Capital formed Dorado Analytics to serve as a holding company for GreenKey Technologies and shortly thereafter Bellicose Capital assigned its interest in Dorado Analytics to Kairos Holdings, which at that time was holding the Trust's U.S. investments that were unrelated to tribal lending services.

- Other Entities Owned by the Trust Structure

  o **Dorado Analytics, LLC**, a Delaware LLC, was created as a holding company for a portion of GreenKey, as described above.

  o **Indian Country Analytics, LLC**, a Delaware LLC, was created early on and was never significantly capitalized or utilized.

  o **Source Point, LLC**, a Delaware LLC, was a slot lessor to a tribal casino in Oklahoma and also owned a maritime asset backed loan in Florida.

  o **Palm Beach Gaming, LLC**, a Delaware LLC, owned a maritime lease and Blue

Horizons Casino Cruises.

  o **Blue Horizons Casino Cruises, LLC** served as the operating entity for the casino
    cruise operation in Florida.

  o **Iron Fence Investments, LLC**, a Delaware LLC, was used as a fundraising
    entity and earned a 1% profits interest for deals it helped to broker.

  o **Alpha One Investments, LLC**, a Delaware LLC, served as a proprietary trading
    firm pertaining to US securities.

- **Matt Martorello** has served as manager of MBM Services and Liont, which were named
  by the trustee of the Trust to manage a number of the trust-owned entities from time to
  time, as explained above. Martorello, through his wholly-owned holding companies, has
  received 25.5% to 30% of the net revenues from Bellicose VI, Bellicose Capital, and
  Eventide, as explained above. Martorello has founded or co-founded a number of U.S.
  start-up companies, and has invested millions of his personal capital in these business
  ventures owned outside of the Trust structure. Entities owned by the Trust have provided
  debt financing to Martorello and/or entities majority owned by Martorello. Some of the
  business entities majority owned by Martorello appear on Exhibit "A" and are described
  below:

  o **Braviant Holdings, LLC** ("Braviant"), a Delaware LLC, is an online consumer
    lending company founded by Martorello in 2013. Martorello made substantial
    investments into Braviant over the years. It is currently managed by its CEO,
    Stephanie Klein.  Braviant owns the following affiliates: Braviant Consumer,
    Braviant, LLC, SunUp Financial (non-prime consumer lender), Chorus Credit
    (near prime consumer lender), and Promovere (a Phillippine company that

operates a customer call center).

o **Jet Business Loans, LLC's** primary activity is small business factoring. Martorello founded Jet in 2015 and continues to be the sole owner, having made substantial investments in this US start-up company since 2015.

o **MBM Services,** described above.

o **Liont, LLC,** described above also owns a share in a Dallas restaurant.

o **Gallant Capital, LLC,** described above.

o **GFLP Entity 1, LP** owns a small equity interest in a real estate development project in Dallas, Texas.

**Explanation of Martorello's interest, involvement, or relationship as to each trust, corporation, person, or entity**

Martorello's role as manager of MBM Services and Liont is described in more detail above. Martorello's participation and consultation with the trustee via his management entities allowed the Trust to benefit from his expertise and to grow the Trust investments on behalf of the Trust beneficiaries, satisfying its fiduciary obligation to its current and remainder beneficiaries. In exchange, Martorello received the benefit of his own profits interest in the Trust majority-owned companies as described above (30% of Bellicose VI, and later 25.5% of Bellicose Capital and Eventide). This was the primary source of compensation to Martorello for his efforts in working with Bellicose and Eventide. He received a reasonable salary over the years, but after that did not receive any other regular source of income or wages from any other Trust-owned subsidiary, until his recent appointed Management position this year at Eventide.

As explained above, Martorello has never received a distribution or any other financial benefit from the Trust and has never been a beneficiary, trustee, or protector of the Trust. He has no power to compel the Trustee to make distributions or turn over Trust assets, nor does he have

the power to change the beneficiaries or cause himself to be added as a beneficiary. Martorello also does not hold the power to change the trustee. By design, the Trust's investments are preserved for the benefit of the trust beneficiaries, Martorello's wife, children, and all future descendants, and the disposition of the Trust assets during his lifetime and after his death are governed by the terms of the Bluetech Irrevocable Trust agreement.

The trustee of the Trust has *full discretion* as to whether to make distributions, or not, to its beneficiaries; there is no set amount to be paid to any beneficiary. That said, in the history of the Trust, the trustee has made one single distribution since its establishment in 2010 to one of its beneficiaries, Rebecca Martorello. Rebecca Martorello used the full amount of that distribution to purchase a life insurance policy on Matt Martorello's life.

Rebecca Martorello received a $70,000 salary from Bellicose VI until her employment was terminated in mid-2013. Rebecca was also employed by Liont to assist with paying invoices and received a similar salary from mid-2017 through early 2019. She has not otherwise received any payments or distributions from Trust-owned subsidiaries.

While Martorello objected to Plaintiff's providing actual dollar figures, as the Court stated it did not want or need them, Plaintiffs have used the figures to allege that for some period of time SPVI received about 90% net vs LVD's distributions of 10%, implying the impropriety of the SPVI and RRTL relationship. Setting aside federal policy regarding self-determination in such matters, Martorello respectfully responds as follows:

The economic split of Plaintiffs ignores entirely the nearly $25mm in equity value created by date of sale and continuing to accrue to the Tribe as the Eventide note nears termination. (See Ex. F at 20). Moreover, this servicing arrangement (including the economic split) is entirely market rate in fintech platforms, even outside of Indian country. Indeed, a

comparative non-bank lending model is diagrammatically presented by the state of Texas: https://occc.texas.gov/sites/default/files/uploads/what-is-a-cab-6-26-14.pdf.  Here, the Credit Access Businesses ("CAB") even **owns the website**, markets, underwrites, originates and collects, performing all of the lending functions, but the lender provides the dollars to be loaned, and it receives the non-usurious "interest" rate (usury cap is 10% APR) while the CAB gets all of the remainder as its fees equating to a combined triple digit cost to the borrower.  This split, on a net basis, is approximately 90% to the CAB and 10% to the lender within the "Components of the Finance Charge" at 90% net vs 10% net: See https://www.checkngo.com/wp-content/uploads/2018/02/TX_PDL_CNG_ONLINE_2018V1.pdf).  Dozens of comparative examples publicly exist across Texas, and similar statutory arrangements to the CAB model have existed in FL, OH and MD.[15]

Even more broadly, fintech platforms working with both bank and non-bank lenders, typically provide and **own** the website the consumer visits. They also own the technology and they originate, underwrite, service, collect, market and fund the loans for the lender.  See examples: *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359 (D. Utah 2014): at 1367–68; *Hudson v. ACE Cash Express, Inc*., 2002 WL 1205060 (S.D. Ind.): where the agreement required ACE to purchase a **95% interest** in any loan made (in ACE storefronts) under the agreement, which determined irrelevant to the court, as was the fact that ACE was responsible for collecting payments under the loans.  *See id.* at *3; See also *Meade v. Avant of Colorado, LLC*, 2018 WL 1101672 (D.Colo.) consumer applied for and obtained loans from servicer's website; servicer

---

[15] See Ex. K, Scott Merritt deposition transcript excerpts at 49:7-15 (testifying that the financial arrangement was ordinary and "actually pretty decent") and 53:4-20 (testifying that this relationship is typical outside of the tribal lending context, particularly in the Texas Credit Service Organization lending model and regarding economics that the Texas lending model "[has] similar rev shares as the tribal."

buys loans within 2-days, paid all lender legal fees and fees to initiate the program, bore all expenses incurred, determined which loan applicants received loans and bore all costs of making such recommendations, was responsible for compliance with federal and state laws, indemnified the Lender, bore all risk of default, and conducted underwriting, servicing, and collection; **Servicer retained 99% of profits** on the loans); and *Beechum v. Navient Solutions, Inc.*, 2016 WL 5340454 (C.D. Cal. Sept. 20, 2016): where the non-bank lender originated, underwrote, marketed, and funded private student loans for which the bank would be identified as the lender. The non-bank lender would subsequently purchase 100% of the loans from the bank within 90 days of disbursement for principal, plus accrued interest, and less the amount paid for indemnification of loan loss.

These fintech relationships have been promoted by modern policy and recognized as legitimate by Treasury and bank regulators, in their efforts to clarify the legal uncertainty plaguing these relationships. See: https://www.fdic.gov/fditech/guide.pdf; https://www.fdic.gov/news/news/financial/2005/fil1405a.html#foot1 revised November 2015, describing what a bank lender/Fintech platform relationship involves in order to "export favorable interest rates provided under the laws of the state where the bank is located" for a "typical charge…APR of nearly 400%". Here the banks "enter into arrangements with third parties" "in which the institution funds payday loans originated through the third party" which "may be underwritten off-site" by "third party originators" and "may involve the sale to the third party of the loans or servicing rights to the loans" and "additional services that the bank would normally provide, including collections, advertising and soliciting applications." See also: https://home.treasury.gov/sites/default/files/2018-08/A-Financial-System-that-Creates-Economic-Opportunities---Nonbank-Financials-Fintech-and-Innovation_0.pdf describing the

"uncertainties created by these court cases" as "pressure" resulting in FinTech Platforms altering "their economic relationships with partnering banks to better account for the risks presented by these court cases" and recommending that "Congress codify that the existence of a service or economic relationship between a bank and a third party (including financial technology companies) does not affect the role of the bank as the true lender of loans it makes" and "federal banking regulators should also reaffirm…"

Indeed, just one week ago, the OCC obliged by issuing its proposed rule, stating "the relationships have been subject to increasing uncertainty about the legal framework that applies to loans made as part of these relationships. This uncertainty may discourage banks and third parties from entering into relationships, limit competition, and chill the innovation that results from these partnerships—all of which may restrict access to affordable credit. The proposed rule would resolve this uncertainty by specifying that a bank makes a loan and is the "true lender" if, as of the date of origination, it (1) is named as the lender in the loan agreement or (2) funds the loan."     See    https://www.occ.gov/news-issuances/news-releases/2020/nr-occ-2020-97.html, putting to an end once and for all the "true lender" controversy.  The alleged 90% to 10% split here, is similarly an issue reserved for Congress or the CFPB.

RESPECTFULLY SUBMITTED AND DATED this 30th day of July, 2020.

Dated: July 30, 2020                              Respectfully submitted,

                                                  /s/ John M. Erbach
                                                  John M. Erbach (VSB No. 76695)
                                                  jerbach@spottsfain.com
                                                  M. F. Connell Mullins, Jr. (VSB No. 47213)
                                                  cmullins@spottsfain.com
                                                  SPOTTS FAIN PC
                                                  411 E Franklin Street Suite 600

Richmond, VA 23219
Tel: (804) 697-2044
Fax: (804) 697-2144

Richard Lawrence Scheff (pro hac vice)
Jonathan P. Boughrum (pro hac vice)
Michael C. Witsch (pro hac vice)
ARMSTRONG TEASDALE LLP
2005 Market Street, 29th Floor
One Commerce Square
Philadelphia, PA 19103
Tel: (267) 780-2012
Fax: (215) 405-9070
rlscheff@armstrongteasdale.com
jboughrum@armstrongteasdale.com
mwitsch@armstrongteasdale.com

*Attorneys for Defendant Matt Martorello*

<u>**CERTIFICATE OF SERVICE**</u>

I, John M. Erbach, hereby certify that on July 30, 2020, I filed the foregoing using the

Court's CM/ECF electronic filing system, which will serve an electronic copy on all counsel of

record by Notice of Electronic Filing (NEF).


*/s/ John M. Erbach*
John M. Erbach (VSB No. 76695)
jerbach@spottsfain.com
SPOTTS FAIN PC
411 E Franklin Street Suite 600
Richmond, VA 23219
Tel: (804) 697-2044
Fax: (804) 697-2144

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| RENEE GALLOWAY, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:19-cv-00314 (REP) |
| v. | ) | |
| | ) | |
| JUSTIN MARTORELLO, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT BLUETECH IRREVOCABLE TRUST'S RESPONSES AND
OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendant Bluetech Irrevocable Trust ("Bluetech"), by counsel and pursuant to Federal
Rules of Civil Procedure 26 and 33, and Local Rule 26 of the United States District Court for the
Eastern District of Virginia, responds and objects as follows to Plaintiff's First Set of
Interrogatories ("Interrogatories"). Bluetech responds to these interrogatories to the best of its
ability based on information currently available. Bluetech reserves the right to supplement these
objections and responses should additional information become available.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Bluetech objects as follows to Plaintiffs' Definitions and Instructions:

1.     Bluetech objects to Plaintiffs' Definitions and Instruction to the extent Plaintiffs
attempt to impose requirements beyond those set forth in the Federal Rules of Civil Procedure or
Local Rules of the Eastern District of Virginia, including Instruction Numbers 1, 2, 3, and 4.

2.     Bluetech objects to Plaintiffs' definition of "You" or "Your" as overly broad and
not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For the purposes

1

of these responses, Bluetech defines the foregoing terms as set forth in Paragraph 63 of Plaintiffs'

Complaint.

3.      Bluetech objects to Plaintiffs' definition of "Identify" or "identity" to the extent

Plaintiffs attempt to impose obligations on Bluetech beyond those required by the Federal Rules

of Civil Procedure and/or the Local Rules of the Eastern District of Virginia, including specifically

with respect to documents no longer in Bluetechs' possession, custody, or control.

4.      Bluetech objects to Plaintiffs' definition of "Document(s)" to the extent Plaintiffs

attempts to impose obligations on Bluetech beyond those required by Fed. R. Civ. P. 26(b)(5),

Local Rule 26, and/or the agreement between the parties regarding logging of items withheld on

the basis of privilege. To the extent privileged information or materials are withheld, Bluetech will

abide by the obligations set forth in Fed. R. Civ. P. 26(b)(5) and Local Rule 26, as modified by

the parties' agreement, if any.

5.      Bluetech objects to Plaintiffs' definition of "file" as vague and ambiguous because

Bluetech does not have an "account" with Plaintiffs.

6.      Bluetech objects to Plaintiffs' definition of "Bellicose Capital" as overly broad and

not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of

these objections and responses, Bluetech interprets "Bellicose Capital" to mean Bellicose Capital,

LLC, as defined in footnote 2 of Plaintiffs' Complaint.

7.      Bluetech objects to Plaintiffs' definition of "Bellicose VI" as overly broad and not

reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these

objections and responses, Bluetech interprets "Bellicose VI" as limited to Bellicose VI.

2

8.    Bluetech objects to Plaintiffs' definition of "Big Picture" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, Bluetech interprets "Big Picture Loans" to mean Big Picture Loans, LLC, as defined in paragraph 14 of Plaintiffs' Complaint.

9.    Bluetech objects to Plaintiffs' definition of "Red Rock" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, Bluetech interprets "Red Rock" to mean Red Rock Tribal Lending, LLC, as defined in paragraph 11 of Plaintiffs' Complaint.

10.    Bluetech objects to Plaintiff's definition of "SourcePoint" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, Bluetech interprets "SourcePoint" as limited to SourcePoint VI, LLC.

11.    Bluetech objects to Plaintiff's definition of "Duck Creek" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, Bluetech interprets "Duck Creek" as limited to Duck Creek Tribal Financial, LLC.

12.    Bluetech objects to Plaintiff's definition of "Ascension" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, Bluetech interprets "Ascension Technologies" to mean Ascension Technologies, LLC, as defined in paragraph 14 of Plaintiffs' Complaint.

13.    Bluetech objects to Plaintiffs' definition of "Kairos" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these

3

objections and responses, Bluetech interprets "Kairos" to mean Kairos Holdings, LLC, as defined in paragraph 60 of Plaintiffs' Complaint.

14.     Bluetech objects to Plaintiff's Instruction No. 3 to the extent Plaintiffs attempts to impose obligations on Bluetech beyond those required by Fed. R. Civ. P. 26(b)(5), Local Rule 26, and/or the agreement between the parties regarding logging of items withheld on the basis of privilege. To the extent privileged information or materials are withheld, Bluetech will abide by the obligations set forth in Fed. R. Civ. P. 26(b)(5) and Local Rule 26, as modified by the parties agreement, if any.

15.     Bluetech objects to Plaintiffs' requests to the extent they seek information or documents prior to January 1, 2011, or after December 31, 2018.

16.     Bluetech objects to all requests that seek proprietary information.

## RESPONSES TO INTERROGATORIES

1.      Identify all monetary distributions received by Defendant as a result of the lending enterprise that is the subject of Plaintiffs' Class Action Complaint, including the dates of distribution, the payor(s), the amount of each distribution, and the account information for where each sum was deposited.

**RESPONSE:** Bluetech owned multiple holding companies (including, but not limited to, Breakwater Holding, LLC, 7X Services, LLC, and Bellicose VI, LLC), which owned multiple businesses unrelated to SourcePoint VI, LLC ("SPVI") and Eventide Credit Acquisitions, LLC ("Eventide"). As such, it's not possible to trace the source of any given equity distribution received by Bluetech from a holding company, to RRTL or BPL. Furthermore, SPVI and Bellicose VI had *multiple* lender clients unrelated to Red Rock Tribal Lending ("RRTL") and Big Picture Loans ("BPL") from which it generated servicing revenues, including SunUp Finance, Shanghai Partners, LLC, Duck Creek Tribal Financial, LLC, and Capeside Productions, LLC. Accordingly, equity distributions stemming from SPVI and Bellicose VI's servicing revenues were not all, or nearly all, attributable to RRTL or BPL in the first instance.  Through the various aforementioned subsidiary holding companies, Bluetech owned interests in Greenkey Markets (a broker dealer firm), Greenkey Technologies (a regulatory compliance technology company for wall street), Alpha One Investments (a commodities futures trading operation), Indian Country Analytics (slot machine leases to Seneca Cayuga Tribe in Oklahoma), SourcePoint, LLC (slot machine leases), Iron Fence Investments (financier to RRTL, but also to multiple non-LVD entities), Palm Beach Gaming (casino boat financing deal), Blue Horizon Cruises, LLC (casino

4

boat operation in Florida). The foregoing were not passive third party investments, but operating businesses for which various Bellicose employees and Mr. Martorello founded and were involved in. As the tax returns demonstrate, equity distributions from the various holding companies to Bluetech as owner, were few and sporadic. Instead, profits from various investments or from SPVI's servicing revenues to numerous consumer lender clients were redeployed by the holding companies into *new* investments and operating entities underneath those intermediary holding companies, such as those mentioned herein. Finally, the waterfall payment in the calculations for both Eventide's note payments and SPVI's servicing revenues were not tied to the underlying consumer loans of BPL or RRTL, but instead predicated on the overall economic performance of the tribal lender. This resulted in numerous months where no payment at all was earned by SPVI for services it rendered, or no note payment due or received by Eventide for the purchase of the business it sold (i.e. BPL's parent company made no note payments to Eventide from November 2018 to July 2020, because BPL was not profitable). For the several foregoing reasons, it is impossible to identify "all monetary distributions" that resulted from RRTL and BPL's loans.

2.      Identify all monetary distributions made by Defendant from the sum(s) identified in the preceding interrogatory, including the dates of distribution, the payees/recipients, the amounts of the distributions, and the account information for where the distribution was sent.

**RESPONSE:** For the reasons detailed in the foregoing interrogatory, where it is not possible to identify the *receipt* of any monies that stem from services rendered to RRTL or debt payments on the note relating to BPL, it is likewise not possible to in turn identify any subsequent distributions, if any. Notwithstanding the foregoing, no beneficiaries have ever received a distribution from the trust.

3.      Identify the name and address of any financial institutions where Defendant has maintained a savings account, checking account, investment account, certificate of deposit, money market account, stock ownership, and/or mutual fund account (collectively all accounts referenced as "banking and investment accounts") since January 1, 2009.

**RESPONSE:** Capital Security Bank Limited ("CSB"), P.O. Box 906, Centrepoint, Avarua, Rarotonga, Cook Islands

4.      Identify the Defendant's current balance in its banking and investment accounts, including the financial institutions where the funds are maintained and identification of the accounts in which the funds are held.

**RESPONSE:** As of July 31, 2023: Bluetech CSB account: 1,697.25 USD

5.      Identify and briefly describe the business of Defendant, including any changes to the business operations during the history of the entity.

5

**RESPONSE:** Bluetech is not a business or an entity. Bluetech Irrevocable Trust is an irrevocable trust held by a trustee for the benefit of the spouse and descendants of Matt Martorello. The trustee holds property in trust for the benefit of beneficiaries.

6.    Identify the organizational structure of Defendant for the history of its existence, including its trustee(s), its beneficiaries, its grantor(s); the dates of any changes to the organizational structure; and their roles and responsibilities in Defendant's trustee(s), beneficiaries, and grantor(s).

**RESPONSE:**

- Trustee: Guardian Trust Corporation – November 1, 2010 to August 30, 2023

- Trustee: Matt Martorello – August 30, 2023 to present

- Beneficiaries:

  o the settlor's mother and siblings – November 1, 2010 to January 7, 2013

  o Rebecca Martorello – added January 7, 2013 (following their marriage)

  o Matthew J. Martorello – added January 12, 2016 (following his birth)

  o All descendants of settlor – added April 1, 2018

- Grantor: Matt Martorello

- Trust name changed: June 10, 2011

- Trust Agreement amended and restated April 1, 2018

7.    Identify the Defendant's beneficiaries since January 1, 2009, as well as the dates the entity/person held the interest and the percentage of that interest.

**RESPONSE:** See #6. The trust has been fully discretionary at all times, meaning the interest of any individual beneficiary is not ascertainable nor susceptible to dividing into percentages. Furthermore, no beneficiaries have ever received a distribution from the trust.

8.    Identify the Defendant's business holdings (*e.g.*, Kairos, Kairos PR, LLC, Breakwater Holdings, LLC, Capstone Irrevocable Trust, and Alpha Tau Capital LLC) since January 1, 2009, as well as the dates Defendant held the ownership interest and the percentage of that interest.

**RESPONSE:**

- Breakwater Holding, LLC (Cook Islands) – November 1, 2010 to present – 100% member. Breakwater became a Texas limited liability company on or about August 30, 2023. Breakwater registered in Texas under the name BWH Texas, LLC.

- Kairos Holdings, LLC (Delaware)

    o  formed by Bluetech November 14, 2014 - 100% member

    o  Transferred to Kairos PR, LLC July 1, 2015

    o  Transferred by Kairos PR to Bluetech March 30, 2017

    o  Dissolved by Bluetech May 23, 2019.

- Kairos PR, LLC – June 18, 2015 until its dissolution March 30, 2017 – 100% member

- 7X Services, LLC – 100% member until its dissolution in 2013.

- Alpha Tau Capital, LLC – formed in 2013, merged into Bellicose Capital, LLC on or around March 13, 2015.

    9.    For each entity identified in the preceding interrogatory, identify the Defendant's role or responsibilities in the management, operation, and control of that entity.

    **RESPONSE:** Guardian Corporation Trust, as trustee from November 1, 2010 to August 30, 2023 was limited to any decisions and authorities duly delineated to them in the operating agreements of those companies.

    10.    Identify and briefly describe the relationship between Defendant and Eventide Credit Acquisitions, LLC, Sourcepoint, Bellicose Capital, Bellicose VI, Liont, LLC, Capstone Irrevocable Trust, Breakwater Holdings, LLC, Kairos, Kairos PR, LLC, Gallant Capital, LLC, and Gallant PR, LLC.

    **RESPONSE:** The term "Sourcepoint" is unclear as there was a Sourcepoint, LLC which leased slot machines to a tribal casino in Oklahoma and there is the aforementioned Sourcepoint VI, LLC "SPVI".

Guardian Trust Corporation, as trustee of Bluetech, owned direct interests in some of the entities, as outlined in Response #8 and no relationship with others. For those entities, its relationship was as member/owner. It did not manage any entities that it owned. It rarely received profits distributions, as most profits were retained in its holding companies and redeployed into their new ventures.  It also has provided litigation financing to Eventide as a secured lender since at least 2019.

7

11.     State the factual bases of all defenses and anticipated defenses that you intend to assert to any motion for class certification filed in this case.

**RESPONSE:** Bluetech objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact Bluetech has not been required to file an answer in this case as of the date of these responses.  Bluetech will supplement its response, as needed, once the scope of the claims in the case is determined.

12.     Identify every individual who you may call as a witness in support of your position as to class certification and, for each person, please provide a summary of facts to which each person might or could testify.

**RESPONSE:** Bluetech objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact Bluetech has not been required to file an answer in this case as of the date of these responses.  Bluetech will supplement its response, as needed, once the scope of the claims in the case is determined.

13.     Identify and describe all evidence to support your contention, if any, that Plaintiffs' claims do not satisfy any specific element of Rule 23 sufficient to certify the case as a class action (e.g. why you contend that the classes are not numerous, that Plaintiffs' claims are not common or typical with that of the class members, that Plaintiffs or their counsel are not adequate, that individual issues would predominate or that the class action device is not superior to another alternative).

**RESPONSE:** Bluetech objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact Bluetech has not been required to file an answer in this case as of the date of these responses.  Bluetech will supplement its response, as needed, once the scope of the claims in the case is determined.

14.     If you contend that you are unable to ascertain any of the proposed classes as defined by Plaintiffs, identify all reasons why you are unable to ascertain each class, including each step you performed to attempt to ascertain each class.

**RESPONSE:** Bluetech objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact Bluetech has not been required to file an answer in this case as of the date of these responses.  Bluetech will supplement its response, as needed, once the scope of the claims in the case is determined.

By: /s/ Jon Hollis

Jon Hollis (VSB No. 84908)

WOODS ROGERS VANDEVENTER
BLACK PLC
901 East Byrd Street, Suite 1550
Richmond, Virginia 23219
Telephone: (804) 343-5020
Facsimile: (804) 343-5021
Jon.hollis@wrvblaw.com

*Counsel for Defendants Bluetech*
*Irrevocable Trust and BWH Texas, LLC*

## <u>VERIFICATION</u>

I, MATT MARTORELLO, Trustee for Bluetech Irrevocable Trust, do hereby certify that

the information provided in the foregoing Responses to Plaintiffs' First Set of Interrogatories is

true to the best of my knowledge and belief.

MATT MARTORELLO


10

## CERTIFICATE OF SERVICE

I, Jon Hollis, hereby certify that on September 3, 2023, I electronically transmitted the foregoing **DEFENDANT BLUETECH IRREVOCABLE TRUST'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** to the following:

*Attorneys for Plaintiffs:*

> Kristi Cahoon Kelly
> Andrew Joseph Guzzo
> KELLY GUZZO, PLC
> 3925 Chain Bridge Road
> Suite 202
> Fairfax, VA 22030
> kkelly@kellyguzzo.com
> aguzzo@kellyguzzo.com

> Leonard Anthony Bennett
> CONSUMER LITIGATION ASSOCIATES
> 763 J. Clyde Morris Boulevard
> Suite 1A
> Newport News, VA 23601
> lenbennett@clalegal.com

*Attorneys for Defendants Eventide Credit Acquisitions, LLC, Justin Martorello, and Rebecca Martorello:*

> Bernard Robert Given, II
> LOEB & LOEB LLP
> 10100 Santa Monica Boulevard
> Suite 2200
> Los Angeles, CA 90067
> bgiven@loeb.com

> Bethany Danielle Simmons
> LOEB & LOEB LLP
> 345 Park Avenue
> New York, NY 10154
> bsimmons@loeb.com

> John David Taliaferro
> LOEB & LOEB LLP
> 901 New York Ave NW
> Suite 300 East

11

Washington, DC 20001
jtaliaferro@loeb.com

By: /s/ Jon Hollis

Jon Hollis (VSB No. 84908)
WOODS ROGERS VANDEVENTER
BLACK PLC
901 East Byrd Street, Suite 1550
Richmond, Virginia 23219
Telephone: (804) 343-5020
Facsimile: (804) 343-5021
Jon.hollis@wrvblaw.com

*Counsel for Defendants Bluetech*
*Irrevocable Trust and BWH Texas, LLC*

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| RENEE GALLOWAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:19-cv-00314 (REP) |
| v. | ) | |
| | ) | |
| JUSTIN MARTORELLO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT BWH TEXAS, LLC'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES[1]**

Defendant BWH Texas, LLC ("BWH" or "Breakwater"), by counsel and pursuant to

Federal Rules of Civil Procedure 26 and 33, and Local Rule 26 of the United States District Court

for the Eastern District of Virginia, responds and objects as follows to Plaintiff's First Set of

Interrogatories ("Interrogatories").  BWH responds to these interrogatories to the best of its ability

based on information currently available. BWH reserves the right to supplement these objections

and responses should additional information become available.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

BWH objects as follows to Plaintiffs' Definitions and Instructions:

1.      BWH objects to Plaintiffs' Definitions and Instruction to the extent Plaintiffs

attempt to impose requirements beyond those set forth in the Federal Rules of Civil Procedure or

Local Rules of the Eastern District of Virginia, including Instruction Numbers 1, 2, 3, and 4.

---

[1] On or about August 30, 2023 Breakwater Holding LLC, a Cook Islands limited liability
company, registered as a Texas limited liability company under the name BWH Texas, LLC.

2.      BWH objects to Plaintiffs' definition of "You" or "Your" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For the purposes of these responses, BWH defines the foregoing terms as set forth in Paragraph 63 of Plaintiffs' Complaint.

3.      BWH objects to Plaintiffs' definition of "Identify" or "identity" to the extent Plaintiffs attempt to impose obligations on BWH beyond those required by the Federal Rules of Civil Procedure and/or the Local Rules of the Eastern District of Virginia, including specifically with respect to documents no longer in BWHs' possession, custody, or control.

4.      BWH objects to Plaintiffs' definition of "Document(s)" to the extent Plaintiffs attempts to impose obligations on BWH beyond those required by Fed. R. Civ. P. 26(b)(5), Local Rule 26, and/or the agreement between the parties regarding logging of items withheld on the basis of privilege. To the extent privileged information or materials are withheld, BWH will abide by the obligations set forth in Fed. R. Civ. P. 26(b)(5) and Local Rule 26, as modified by the parties' agreement, if any.

5.      BWH objects to Plaintiffs' definition of "file" as vague and ambiguous because BWH does not have an "account" with Plaintiffs.

6.      BWH objects to Plaintiffs' definition of "Bellicose Capital" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Bellicose Capital" to mean Bellicose Capital, LLC, as defined in footnote 2 of Plaintiffs' Complaint.

2

7.    BWH objects to Plaintiffs' definition of "Bellicose VI" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Bellicose VI" as limited to Bellicose VI.

8.    BWH objects to Plaintiffs' definition of "Big Picture" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Big Picture Loans" to mean Big Picture Loans, LLC, as defined in paragraph 14 of Plaintiffs' Complaint.

9.    BWH objects to Plaintiffs' definition of "Red Rock" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Red Rock" to mean Red Rock Tribal Lending, LLC, as defined in paragraph 11 of Plaintiffs' Complaint.

10.    BWH objects to Plaintiff's definition of "SourcePoint" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "SourcePoint" as limited to SourcePoint VI, LLC.

11.    BWH objects to Plaintiff's definition of "Duck Creek" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Duck Creek" as limited to Duck Creek Tribal Financial, LLC.

12.    BWH objects to Plaintiff's definition of "Ascension" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Ascension Technologies" to mean Ascension Technologies, LLC, as defined in paragraph 14 of Plaintiffs' Complaint.

3

13.    BWH objects to Plaintiffs' definition of "Kairos" as overly broad and not reasonably limited to parties relevant to the claims in Plaintiffs' Complaint. For purposes of these objections and responses, BWH interprets "Kairos" to mean Kairos Holdings, LLC, as defined in paragraph 60 of Plaintiffs' Complaint.

14.    BWH objects to Plaintiff's Instruction No. 3 to the extent Plaintiffs attempts to impose obligations on BWH beyond those required by Fed. R. Civ. P. 26(b)(5), Local Rule 26, and/or the agreement between the parties regarding logging of items withheld on the basis of privilege. To the extent privileged information or materials are withheld, BWH will abide by the obligations set forth in Fed. R. Civ. P. 26(b)(5) and Local Rule 26, as modified by the parties agreement, if any.

15.    BWH objects to Plaintiffs' requests to the extent they seek information or documents prior to January 1, 2011, or after December 31, 2018.

16.    BWH objects to all requests that seek proprietary information.

## RESPONSES TO INTERROGATORIES

1.    Identify all monetary distributions received by Defendant as a result of the lending enterprise that is the subject of Plaintiffs' Class Action Complaint, including the dates of distribution, the payor(s), the amount of each distribution, and the account information for where each sum was deposited.

**RESPONSE:** BWH's response begins by reference to Bluetech Irrevocable Trust ("Bluetech"). Bluetech owned multiple holding companies (including, but not limited to, Breakwater Holding, LLC, 7X Services, LLC, and Bellicose VI, LLC), which owned multiple businesses unrelated to SourcePoint VI, LLC ("SPVI") and Eventide Credit Acquisitions, LLC ("Eventide"). As such, it's not possible to trace the source of any given equity distribution received by Bluetech from a holding company, to RRTL or BPL. Furthermore, SPVI and Bellicose VI had *multiple* lender clients unrelated to Red Rock Tribal Lending ("RRTL") and Big Picture Loans ("BPL") from which it generated servicing revenues, including SunUp Finance, Shanghai Partners, LLC, Duck Creek Tribal Financial, LLC, and Capeside Productions, LLC. Accordingly, equity distributions stemming from SPVI and Bellicose VI's servicing revenues were not all, or nearly all, attributable to RRTL or BPL in the first instance. Through the various

4

aforementioned subsidiary holding companies, Bluetech owned interests in Greenkey Markets (a broker dealer firm), Greenkey Technologies (a regulatory compliance technology company for wall street), Alpha One Investments (a commodities futures trading operation), Indian Country Analytics (slot machine leases to Seneca Cayuga Tribe in Oklahoma), SourcePoint, LLC (slot machine leases), Iron Fence Investments (financier to RRTL, but also to multiple non-LVD entities), Palm Beach Gaming (casino boat financing deal), Blue Horizon Cruises, LLC (casino boat operation in Florida). The foregoing were not passive third party investments, but operating businesses for which various Bellicose employees and Mr. Martorello founded and were involved in. As the tax returns demonstrate, equity distributions from the various holding companies to Bluetech as owner, were few and sporadic. Instead, profits from various investments or from SPVI's servicing revenues to numerous consumer lender clients were redeployed by the holding companies into *new* investments and operating entities underneath those intermediary holding companies, such as those mentioned herein. Finally, the waterfall payment in the calculations for both Eventide's note payments and SPVI's servicing revenues were not tied to the underlying consumer loans of BPL or RRTL, but instead predicated on the overall economic performance of the tribal lender. This resulted in numerous months where no payment at all was earned by SPVI for services it rendered, or no note payment due or received by Eventide for the purchase of the business it sold (i.e. BPL's parent company made no note payments to Eventide from November 2018 to July 2020, because BPL was not profitable). For the several foregoing reasons, it is impossible to identify "all monetary distributions" that resulted from RRTL and BPL's loans.

Breakwater owned 100% of the equity and voting interests in Bellicose VI, LLC from early 2013 until December 31, 2013. After which, it was no longer in the ownership chain above Bellicose Capital (with the exception being a 13-day period between March 1, 2015and March 13, 2015). On June 30, 2015, BWH became the holding company of multiple entities entirely unrelated to SPVI, and instead only held ownership in SourcePoint, LLC (a slot leasing company), Palm Beach Gaming, LLC (financing company to a casino boat in Florida) and majority but partial ownership of Dorado Analytics, LLC (which owned Green Key Technologies – the aforementioned regulatory technology company for wall street). Later that year, Blue Horizon Casino Cruises, LLC (a casino boat operation in Florida) was also under Breakwater's ownership. In January 1, 2016 59.6% economic and equity interests in Eventide and 100% voting interest for issues delineated to it under the Eventide operating agreement, were transferred to Breakwater. For the several foregoing reasons, it is impossible to identify "all monetary distributions" that resulted from RRTL and BPL's loans.


       2.     Identify all monetary distributions made by Defendant from the sum(s) identified in the preceding interrogatory, including the dates of distribution, the payees/recipients, the amounts of the distributions, and the account information for where the distribution was sent.

      **RESPONSE:** For the reasons detailed in the foregoing interrogatory response, where it is not possible to identify the *receipt* of any monies that stem from services rendered to RRTL or debt payments on the note relating to BPL, it is likewise not possible to in turn identify any subsequent distributions, if any. Notwithstanding the foregoing, no beneficiaries have ever received a distribution from the trust.

3.      Identify the name and address of any financial institutions where Defendant has maintained a savings account, checking account, investment account, certificate of deposit, money market account, stock ownership, and/or mutual fund account (collectively all accounts referenced as "banking and investment accounts") since January 1, 2009.

**RESPONSE:**

Capital Security Bank Limited ("CSB")
P.O. Box 906
Centrepoint
Avarua
Rarotonga
Cook Islands

Tolleson Wealth Management
5500 Preston Road, Suite 250
Dallas, Texas 75205

4.      Identify the Defendant's current balance in its banking and investment accounts, including the financial institutions where the funds are maintained and identification of the accounts in which the funds are held.

**RESPONSE:**  As of July 31, 2023:

- Breakwater CSB account: 6,860.30 USD

- Breakwater Tolleson account closed 2019

5.      Identify and briefly describe the business of Defendant, including any changes to the business operations during the history of the entity.

**RESPONSE:** Breakwater Holding, LLC is a passive holding company established for the purpose of holding investments of the trust (as explained in the foregoing interrogatories). It does not engage in business and has always served as a holding company, and nothing more.  BWH owned 100% of the equity and voting interests in Bellicose VI, LLC from early 2013 until December 31, 2013.  After which, it was no longer in the ownership chain above Bellicose Capital (with the exception being a 13-day period between March 1, 2015 and March 13, 2015). On June 30, 2015, Breakwater became the holding company of multiple entities entirely unrelated to SPVI, and instead only held ownership in SourcePoint, LLC (a slot leasing company), Palm Beach Gaming, LLC (financing company to a casino boat in Florida) and majority but partial ownership of Dorado Analytics, LLC (which owned Green Key Technologies – the aforementioned regulatory technology company for wall street).  Later that year, Blue

6

Horizon Casino Cruises, LLC (a casino boat operation in Florida) was also under Breakwater's ownership.  In January 1, 2016 59.6% economic and equity interests in Eventide and 100% voting interest for issues delineated to it under the Eventide operating agreement, were transferred to Breakwater.

     6.    Identify the management structure of Defendant for the history of its operations, including identification of officers and managers, their dates of service, and their roles and responsibilities in Defendant's management.

**RESPONSE:** Breakwater Holding, LLC was managed by the following managers on the following dates:

- Guardian's affiliate director company, ATP Directors Ltd., was named as manager upon the company's establishment on November 1, 2010

- MBM Services, LLC was appointed as manager at some point afterward. It was removed as manager by Guardian Trust Corporation on February 9, 2015.

- Liont, LLC was appointed as manager by Guardian Trust Corporation on February 9, 2015 and removed by Guardian Trust Corporation on June 1, 2018.

- ATX Corporate Services, LLC was appointed as manager by Guardian Trust Corporation on June 1, 2018 and removed by Guardian Trust Corporation on September 27, 2018.

- ATP Directors Ltd. was appointed as manager by Guardian Trust Corporation on September 27, 2018 and resigned August 29, 2023.

- On August 30, 2023, Breakwater Holding, LLC was registered as a Texas limited liability company under the BWH Texas, LLC.  Liont LLC was appointed as its manager and remains its manager at present.

     7.    Identify the ownership of Defendant since January 1, 2009 – including, to the extent applicable, the voting interest owners, equity owners, members, and/or shareholders – as well as the dates the entity/person held the ownership interest, and the percentage of that interest.

**RESPONSE:** Breakwater has been owned 100% by Bluetech Irrevocable Trust for its entire existence from November 1, 2010 to present.

     8.    Identify and briefly describe the relationship between Defendant and Eventide Credit Acquisitions, LLC, Sourcepoint, Bellicose Capital, Bellicose VI, Liont, LLC, Bluetech Irrevocable Trust, Capstone Irrevocable Trust, Kairos, Kairos PR, LLC, Gallant Capital, LLC, and Gallant PR, LLC.

**RESPONSE:** The term "Sourcepoint" is unclear as there was a Sourcepoint, LLC which leased slot machines to a tribal casino in Oklahoma and there is the aforementioned Sourcepoint VI, LLC "SPVI".

Breakwater owned direct interests in some of the entities. Its relationship was as member/owner. Its membership rights were as duly delineated to them in the operating agreements of those companies. It did not manage any entities that it owned. It rarely received profits distributions, as most profits were retained in holding companies and redeployed into their new ventures. Most profits were retained in its holding companies and redeployed into new ventures or investments.

- Eventide Credit Acquisitions, LLC (Delaware)

  o Class A Voting interest – 100% January 1, 2016 to present

  o Class A Economic interest – 59.6% January 1, 2016 to present

  o Class A Equity interest - 59.6% January 1, 2016 to present

- SPVI – no relationship

- Bellicose Capital, LLC – no relationship.

- Bellicose VI – Breakwater owned 100% equity interest of Bellicose VI, LLC in early 2013 and transferred such equity to Alpha Tau Capital, LLC by December 31, 2013.

- Liont, LLC – Liont, LLC managed Breakwater from February 9, 2015 until it was removed as manager by Guardian Trust Corporation on June 1, 2018. It was installed as manager again on August 30, 2023.

- Kairos Holdings, LLC – Kairos transferred its interests in Eventide to Breakwater January 1, 2016.

- Kairos PR, LLC – no relationship

- Gallant Capital, LLC – Gallant and Breakwater are both members of Eventide, but there is no relationship beyond that.

- Gallant PR, LLC – no relationship.

9.      State the factual bases of all defenses and anticipated defenses that you intend to assert to any motion for class certification filed in this case.

**RESPONSE:** BWH objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact BWH has not been required to file an answer in this case as of the date of these responses. BWH will supplement its response, as needed, once the scope of the claims in the case is determined.

10.     Identify every individual who you may call as a witness in support of your position as to class certification and, for each person, please provide a summary of facts to which each person might or could testify.

**RESPONSE:** BWH objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact BWH has not been required to file an answer in this case as of the date of these responses.  BWH will supplement its response, as needed, once the scope of the claims in the case is determined.


11.     Identify and describe all evidence to support your contention, if any, that Plaintiffs' claims do not satisfy any specific element of Rule 23 sufficient to certify the case as a class action (e.g. why you contend that the classes are not numerous, that Plaintiffs' claims are not common or typical with that of the class members, that Plaintiffs or their counsel are not adequate, that individual issues would predominate or that the class action device is not superior to another alternative)  the factual bases of all defenses and anticipated defenses that you intend to assert to any motion for class certification filed in this case.

**RESPONSE:**  BWH objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact BWH has not been required to file an answer in this case as of the date of these responses.  BWH will supplement its response, as needed, once the scope of the claims in the case is determined.


12.     If you contend that you are unable to ascertain any of the proposed classes as defined by Plaintiffs, identify all reasons why you are unable to ascertain each class, including each step you performed to attempt to ascertain each class.

**RESPONSE:** BWH objects to this Interrogatory as premature given the pendency of its Rule 12(b)(6) motion to dismiss and the fact BWH has not been required to file an answer in this case as of the date of these responses.  BWH will supplement its response, as needed, once the scope of the claims in the case is determined.


By: /s/ Jon Hollis

Jon Hollis (VSB No. 84908)
WOODS ROGERS VANDEVENTER
BLACK PLC
901 East Byrd Street, Suite 1550
Richmond, Virginia 23219
Telephone: (804) 343-5020
Facsimile: (804) 343-5021
Jon.hollis@wrvblaw.com

*Counsel for Defendants Bluetech*
*Irrevocable Trust and BWH Texas, LLC*

## **VERIFICATION**

I, MATT MARTORELLO, manager of Liont LLC, which is manager of BWH Texas LLC,

do hereby certify that the information provided in the foregoing Responses to Plaintiffs' First Set

of Interrogatories is true to the best of my knowledge and belief.

MATT MARTORELLO

10

## <u>CERTIFICATE OF SERVICE</u>

I, Jon Hollis, hereby certify that on September 3, 2023, I electronically transmitted the

foregoing **DEFENDANT BWH TEXAS LLC'S RESPONSES AND OBJECTIONS TO**

**PLAINTIFFS' FIRST SET OF INTERROGATORIES** to the following:

*Attorneys for Plaintiffs:*

> Kristi Cahoon Kelly
> Andrew Joseph Guzzo
> KELLY GUZZO, PLC
> 3925 Chain Bridge Road
> Suite 202
> Fairfax, VA 22030
> kkelly@kellyguzzo.com
> aguzzo@kellyguzzo.com
>
> Leonard Anthony Bennett
> CONSUMER LITIGATION ASSOCIATES
> 763 J. Clyde Morris Boulevard
> Suite 1A
> Newport News, VA 23601
> lenbennett@clalegal.com

*Attorneys for Defendants Eventide Credit Acquisitions, LLC, Justin Martorello, and Rebecca Martorello:*

> Bernard Robert Given, II
> LOEB & LOEB LLP
> 10100 Santa Monica Boulevard
> Suite 2200
> Los Angeles, CA 90067
> bgiven@loeb.com
>
> Bethany Danielle Simmons
> LOEB & LOEB LLP
> 345 Park Avenue
> New York, NY 10154
> bsimmons@loeb.com
>
> John David Taliaferro
> LOEB & LOEB LLP
> 901 New York Ave NW
> Suite 300 East

Washington, DC 20001
jtaliaferro@loeb.com

By: /s/ Jon Hollis

Jon Hollis (VSB No. 84908)
WOODS ROGERS VANDEVENTER
BLACK PLC
901 East Byrd Street, Suite 1550
Richmond, Virginia 23219
Telephone: (804) 343-5020
Facsimile: (804) 343-5021
Jon.hollis@wrvblaw.com

*Counsel for Defendants Bluetech*
*Irrevocable Trust and BWH Texas, LLC*

12

**SUPPLEMENT TO RESPONSE TO SOFA Q#29**

(Exhibit References are to Response to Motion to Repatriate)

- On August 29, 2023, ATP Directors Ltd. resigned as the manager of Breakwater. *See* Ex. F.
- On August 30, 2023, the Trustee resigned as trustee of Bluetech See Ex. G at 1
- That same day, Martorello was appointed as trustee of Bluetech and the law governing Bluetech was changed to the laws of the state of Texas. See Ex. H at 2.
- Martorello was also appointed the manager of Breakwater that same day. See Ex. I.
- On September 13, 2023, Breakwater was converted to a limited liability company organized under the laws of the state of Texas under the name BWH Texas, LLC ("BWH Texas"). See Ex. J.
- That same day, Bluetech's assets were assigned to BWH Texas and Martorello's three minor children became the equity holders in BWH Texas. See Exs. K-L.
- In addition, effective as of September 13, 2023, with the distribution of Bluetech's assets to Martorello's three minor children, Bluetech was terminated. See Ex. M.